JOHN P. TOBIN *v.* THOMAS H. ALLEN & CO.

1. PRIORITY OF LIEN. *Contest between creditors. Priority obtained by fraud.*

A. took a promissory note of B. T., seeing the transaction, volunteered the statement that B. was insolvent. A. replied he intended to attach B.'s cotton. T. assured him that he had a deed of trust on the cotton. A. doubting the statement, and proposing to go to the county seat, to examine the record and sue out the attachment, T. earnestly reaffirmed it, and persuaded A. to stay all night with him, promising to send his clerk to bring up the trust deed. A. stayed, and T., sending for B., procured from him a trust deed on the cotton. A., discovering this, proceeded to sue out his attachment, but T., mounting B. on a horse, sent him with the trust deed by another road to the county seat, which he reached before A., and had the trust deed recorded. Subsequently A. attached the cotton. *Held,* that the priority thus fraudulently obtained by T. could not avail him; and that in a replevin suit by T. against the attaching officer for the cotton, A. being substituted as defendant, a judgment for the defendant was proper.

2. EVIDENCE. *False statement. Estoppel.*

Where one has been prevented from advantageously altering his position by a wilful false statement, the party uttering the falsehood shall be compelled in any subsequent contest to stand upon the facts as they really existed at the time the statement was made, and shall not be permitted to claim the advantage of a change in his own position, which a reliance upon the falsehood by the other party enabled him to obtain.

Error to the Circuit Court of Bolivar County.

Hon. C. C. Shackleford, Judge.

*T. J. & F. A. R. Wharton*, for the plaintiff in error.

The deed of trust, being made to secure a *bona fide* debt, is not affected by any misrepresentations made by the beneficiary, to prevent another creditor from acquiring a prior lien by suing out and levying an attachment against the debtor. *Hunt* v. *Knox*, 34 Miss. 655; *Mangum* v. *Finucane*, 28 Miss. 354; 1 S. & M. 541; 13 S. & M. 22; 5 How. (Miss.) 165, 279; 6 How. (Miss.) 311; 12 S. & M. 679.

*Nugent & McWillie*, for the defendant in error.

The plaintiff cannot sustain the action based on a priority of lien procured by his own fraud. *Ex dolo malo non oritur actio.* Broom's Legal Maxims, 276, 292, 703, 710, notes and cases cited.

Chalmers, J., delivered the opinion of the court.

Allen & Co., merchants and factors in the city of Memphis, sent their clerk and agent Branch to Bolivar County, Miss., to look after a debt due them from one Boatright. Branch met Boatright at the storehouse of the appellant Tobin in Bolivar County, and received from him his promissory note. The appellant, seeing the transaction, asked Branch after Boatright's departure why he troubled himself to take the note, inasmuch as Boatright was insolvent; to which Branch replied that Boatright had some cotton, and, as he was about leaving the State, he intended at once to attach it. The appellant assured him that such a proceeding would be futile, because he himself already had a trust deed which had been executed in the previous spring, covering the cotton as well as Boatright's other property. Branch was sceptical as to the truth of this assertion, and avowed his intention of proceeding at once to the county seat, which was ten miles or more distant, and there suing out his writ of attachment. The appellant earnestly repeated his assurances, pledging his word of honor as a gentleman that he had the trust deed, which he said was at the court-house. He urged Branch to stay all night with him, and proffered, if he would do so, to send one of his clerks to the county seat to bring up his trust deed, in order that

Branch might be satisfied as to the truth of his assertions. Branch accepted the invitation, and consented to stay. The appellant, in fact, had no trust deed from Boatright, but at once sent a clerk to his residence for the purpose of procuring one. The next morning Boatright came to Tobin's store, and, going into a back room, signed a deed of trust upon all of his property, including the cotton. Branch, observing what was going on, demanded to see the paper, and when after some hesitation and refusal he was allowed to do so, he denounced the appellant's conduct in severe terms, and announced his intention to sue out an attachment writ before the document could be acknowledged or recorded, and mounting his horse started to the county seat for the purpose.

As soon as he had disappeared, Boatright was furnished by the appellant with a horse, and, taking a different road, succeeded in reaching the court-house and having the instrument recorded about ten minutes before Branch arrived there. The latter, however, after hesitating for two days, sued out the attachment writ, and had the same levied on the cotton. Boatright, the debtor, made no resistance, and Allen & Co. obtained judgment of condemnation against the cotton. Before the *vendi* could be executed by a sale, the appellant sued out his writ of replevin against the sheriff, claiming the cotton by virtue of his trust deed, which was, as we have seen, two days anterior in date to the levy of the attachment. Notwithstanding this apparent priority of lien, the court below instructed the jury that the fraudulent conduct of the appellant estopped him from asserting his rights under the trust deed; and verdict and judgment were thereupon rendered in favor of Allen & Co., who had been allowed to come in and substitute themselves for the sheriff. From this judgment Tobin appeals.

The principal error relied on is the action of the court in refusing to give to the jury an instruction asked by the appellant in the following words: " That in a contest between creditors. for priority of liens against their debtors the law does not require one creditor to act in good faith towards another in conversations or representations concerning their liens. In such contests the creditors act at arm's length, and the law rewards the most diligent."

It will be at once perceived that if we concede this to be the enunciation of a correct principle of law, it does not meet the requirements of the case. In order for the instruction to have properly met and been responsive to the facts proved, there should have been added to it some such words as these : " And in such contests one creditor, for the purpose of gaining an advantage over the other, may resort to deceit, fraud and falsehood, whether called upon by his adversary for information or whether he voluntarily proffers it."

It is impossible that a doctrine so revolting to common honesty as this can be consistent with legal principles. It is one thing to say that creditors holding claims equally meritorious against a common debtor occupy no such relation of trust and confidence towards each other that one is entitled to exact of the other a true response to all inquiries propounded relative to his situation and intentions, and quite a different thing to say that one may under the guise of friendship induce the other by fraud and falsehood to forbear taking a contemplated step for the collection of his claim, and then himself take advantage of the false security into which the other has been lulled, in order to obtain a priority over him. There is no obligation of disclosure, but there is a prohibition of voluntary falsehood. It is said by counsel that, both debts being just, it is a race of diligence, and that the law favors the diligent and not the slothful creditor. But this race of diligence must not be converted into a race of fraud, nor one party be allowed to add speed to his feet by affixing to them the wings of falsehood.

It is argued that under our registry laws there was afforded to the agent of the appellees an easy method of ascertaining whether the appellant had a mortgage or not, and that therefore he had no right to neglect the means of information provided for him by law, and rely upon the assurances of the appellant. There is force in the argument, and in a case showing negligence upon the part of the agent, or an omission by him to make the examination upon a bare statement by the other creditor that the incumbrance existed, it might be deemed satisfactory ; but in the case at bar the agent of the appellees, distrusting the statement, proposed at once to proceed to the

county seat to make the examination, and was only dissuaded from doing so by the repeated assurances of the appellant, accompanied by an offer to send and get the trust deed for his inspection.　No laches under these circumstances can fairly be imputed to the agent.

It is a maxim of law, no less than of morals, that a man shall not be permitted to take advantage of his own wrong (or as it was anciently expressed, *nullus commodum capere potest de injuria sua propria*), and it is said to be an equally sound principle " that he who prevents a thing being done shall not avail himself of the non-performance which he has occasioned." Broom's Legal Maxims, 278.　The rule of law is well settled, that where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and thereby induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a state of things different from that represented.　*Cocke* v. *Kuykendall*, 41 Miss. 65.

It would seem equally sound in law and morals that where one has been prevented from advantageously altering his position by a wilful false statement, the party uttering the falsehood shall be compelled in any subsequent contest to stand upon the facts as they really existed at the time the statement was made, and shall not be permitted to claim the advantage of a change in his own position which a reliance upon the falsehood by the other party enabled him to obtain.　Whether this would be found a sound maxim under all circumstances we will not affirm, but we are satisfied with it as applicable to the facts of this case.　　　　　　　　　　　　　　　　*Judgment affirmed.*