### J. T. HICKEY AND WIFE v. JOHN BEHRENS.
#### No. 2656.

1. **Amending Judgment Entry.**—The power to correct the records exists in the District Court, not by reason of its continued jurisdiction over the subject matter, but by virtue of its continuing power over its records.

2. **Same—Evidence Authorizing it.**—The current of authority is that the proof authorizing the amendment must consist of something in the record. The judge's notes are sufficient. It seems, however, that the personal memory of the presiding judge at a subsequent term might authorize such correction or amendment.

3. **Estoppel—Pleading.**—Behrens sued in trespass to try title for a house and lot which he had bought at a trustee's sale made by a trustee acting under a power of attorney made by J. T. Hickey and his mother-in-law, Mrs. Eliza Flowers, to secure a loan of $6000. Suit was against Hickey and wife and Mrs. Flowers. In defense, Hickey and wife claimed the property as their business homestead. Mrs. Flowers disclaimed. Plaintiff, in reply to the claim of homestead rights, pleaded certain statements and declarations by Hickey and wife to the effect that the property in controversy was not their homestead at the time of the execution of the trust deed upon which the money was obtained by them, and that it was the property of Mrs. Flowers. *Held,* that exceptions to the plea were properly overruled, inasmuch as the declarations, if not a technical estoppel, were a denial of ownership of the property by them, by their assertion of Mrs. Flowers' ownership.

4. **Parol Testimony Affecting Claim of Homestead.**—A lot claimed as homestead was held under a deed to the husband as attorney in fact for his mother-in-law. Against the claim of homestead rights in the property by the husband and wife their declarations were competent, tending to show ownership in the mother-in-law, and thus to negative the homestead rights claimed.

5. **Argument of Counsel.**—The defendant Hickey in his testimony had testified that he had caused title to the lot to be made to his mother-in-law to put it out of reach of his creditors. Adverse counsel denounced it as *colossal rascality.* *Held,* that the use of such epithet upon such state of facts was no ground for reversal.

6. **Trustee—Sale.**—The deed of trust required sale to be made "at the usual and

customary place of making such sales, at the south door of the court house." The sale was made at the east door, which was the usual place of making such sales. *Held*, immaterial, unless injury was shown therefrom.

7. **Charge—Material Issues.**—The facts showed that the material issues were upon the ownership of the lot, and upon the fact of its use as homestead. Upon these issues the charge of the court was full and distinct. *Held*, that the refusal of charges based upon the hypothesis that the lots were owned by the party asserting the homestead rights was not ground for reversal.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham. The opinion states the case.

*Stewart, Hunter & Dunklin*, for appellants. —1. "A plea of estoppel *in pais* by conduct should show, first, that the party sought to be estopped has made a representation with the intention of influencing the conduct of the pleader in a manner inconsistent with the claim set up; second, that the misrepresensation was known by the party making it to be false, and that the pleader did not know that it was false, but on the contrary believed it to be true; third, that the pleader has acted upon such act or declaration; fourth, that he will be prejudiced by allowing the truth of the admission to be disproved." Big. on Estop., 3 ed., 593; Page v. Arnim, 29 Texas, 72; Scoby v. Sweatt, 28 Texas, 713; Mayenborg v. Haynes, 50 N. Y., 675.

2. The plea of estoppel, as well as all pleas in the nature of confession and avoidance, must admit the truth of the matter to which it is an answer, or give color. The answer setting up homestead rights in the property avers that the legal and equitable title was in J. T. Hickey, and that at the time the deed of trust was given he was in actual occupation of the same, using it as his place of business; that being the character and use of the property, no declarations, however solemnly made, or under what circumstances soever, would work an estoppel upon the right of defendants to prove their title, use, and occupation as a homestead, as averred in their answer, and to recover thereon. And being a plea of estoppel against setting up a homestead right, where title is shown in the defendant, even by the plea of estoppel itself, and use and actual occupation as a homestead at the time the declarations are alleged to have been made, it is obnoxious to a general demurrer.

On who has the title. A deed made to A, attorney in fact for B, vests the title in A and not B. Story on Agency, 9 ed., sec. 151; Radford v. Lyon, 65 Texas, 472.

On declarations affecting homestead rights. Jacobs v. Hawkins, 63 Texas, 2; Thomas v. Williams, 50 Texas, 275; Axer v. Bassett, 63 Texas, 545; Inge v. Cain, 65 Texas, 75; Medlenka v. Downing, 59 Texas, 37; Wheatley v. Griffin, 60 Texas, 209.

3. If the property in fact belonged to Hickey, and the legal title was

in him, and he was actually occupying the same and using it as his place of business at the time the deed of trust was executed, then his declarations that it was not his homestead, or that it did not belong to him, or that it belonged to Eliza Flowers, or that her money paid for it, would be incompetent and immaterial, even against himself; *a fortiori*, they would be incompetent to affect the rights of his wife.    Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 2; Radford v. Lyon, 65 Texas, 472; Thomas v. Williams, 50 Texas, 275; Axer v. Bassett, 63 Texas, 545; Inge v. Cain, 65 Texas, 75; Medlenka v. Downing, 59 Texas, 37.

4.    The court erred in refusing to instruct the jury, as requested by defendant, to the effect that inasmuch as no evidence had been offered to prove that the trustee had advertised the sale of the lots, or had sold the same in the manner and at the place provided in the deed of trust, they should find for the defendants.    Fuller v. O'Neil, 6 S. W. Rep., 1881; 1 Dev. on Deeds, sec. 406.

*Ball & McCart* and *Capps & Cantey*, for appellee. — 1.    The demurrers and special exceptions referred to in said assignment, not having been presented in the court below, will be deemed to have been waived; nor will a motion made after the expiration of the term to cause the court's alleged ruling thereon to be entered on the record *nunc pro tunc,* the motion being overruled, be regarded as a substitute therefor.    Rule 26 for Dist. Ct.; Ximenes v. Ximenes, 43 Texas, 464; Freem. on Judg., sec. 72.

2.    The plea in estoppel complained of was sufficient, and should have been so held had the demurrer thereto been presented.    Ranney v. Miller, 51 Texas, 263; Hurt v. Cooper, 63 Texas, 362; Schwarz v. Bank, 67 Texas, 217; Eylar v. Eylar, 60 Texas, 315.

3.    The property did not in fact belong to Hickey, nor was the legal title in him, but the legal title was in Mrs. Flowers, and prima facie belonged to her by reason of the recitals in the deed to said Hickey as her attorney in fact.    Giddens v. Byers' Heirs, 12 Texas, 75; Eckhart v. Reidel, 16 Texas, 62; Paschal v. Acklin, 27 Texas, 173.

4.    The declarations of Hickey and wife and Mrs. Flowers were admissible for the several purposes of showing that the defendant Flowers actually owned the property in controversy, and for the purpose of establishing the plea in estoppel, and for the further purpose of contradicting and disproving the evidence of Hickey and his wife and Mrs. Flowers, and for the purpose of impeaching them, the predicate having been laid therefor.    Railway v. Garcia, 62 Texas, 286.

5.    The deed of trust under which the sale was made having provided that the recitals of the trustee deed should be full evidence of the truth thereof, and a perpetual bar to the grantors therein, it thereby became unnecessary to introduce any further evidence until said sale was attacked. 2 Jones on Mort., sec. 1895.

6.　The trustee's deed having been admitted in evidence without objection on the part of appellants, and no attack having been made upon same on account of any inconsistency with the deed of trust, and the deed of trust having provided in express terms that it, the trustee's deed, should be a perpetual bar to appellants and their heirs and assigns, the court did not err in refusing to give said charge, especially in view of the fact that the attention of the court was in no way called to the alleged inconsistency.　Hough v. Hill, 47 Texas, 148; Ann Berta Lodge v. Leverton, 42 Texas, 22; Watts v. Johnson, 4 Texas, 318; Smith v. Sherwood, 2 Texas, 460.

7.　The superior title, both legal and equitable, was put in the defendant Flowers, and not in Hickey, by the deed from Daggett, and the court erred in instructing the jury to the contrary.　Paschal v. Acklin, 27 Texas, 173.

8.　So much of the special charges asked by defendants as embraced the law of the case were substantially embodied in the main charges. Willis & Bro. v. Morris, 63 Texas, 458; Grumbles v. Grumbles, 17 Texas, 472; Daffell v. Noble, 14 Texas, 655; Shryock v. Latimer, 57 Texas, 674.

HOBBY, JUDGE.—This action of trespass to try title was brought in the District Court of Tarrant County on March 19, 1886, by the appellee, John Behrens, against J. T. Hickey and his wife Nellie Hickey and Mrs. Eliza Flowers, to recover two lots in the city of Fort Worth, in Daggett's addition to said city, which were covered by a one story brick building, and for which rents were also claimed.

The property was sequestrated by the plaintiff below, and replevied by the defendants.　Mrs. Eliza Flowers answered on June 19, 1886, disclaiming any interest in the property.

J. T. Hickey and wife answered by a general denial, plea of not guilty, and a special plea that plaintiff's claim of title to the lots is based upon a deed of trust executed by J. T. Hickey and Eliza Flowers to G. R. Newton, for the benefit of the City National Bank of Fort Worth, on the third day of July, 1885, to secure a note of $6000 executed by said Hickey and said Flowers to said bank for money loaned to Hickey in due course of the business of said bank, and that on said third day of July, 1885, and for a long time prior thereto, the said property and lots were and had been in actual occupation and use by the said Hickey as the place to exercise his calling and business, and were and had been his business homestead, and ever since had been.　That on said date he was a married man and the head of a family, consisting of his said wife Nellie and eight minor children.　That his residence was in the city of Fort Worth, and the lots in controversy, together with the lots upon which their residence stands, and which are used for the purposes of a home, were at the time

they were designated as their homestead of a less value than $5000, exclusive of improvements.

Plaintiff replied specially to this as follows: That if said premises had ever been used and occupied by defendant as a business homestead, then the same had been abandoned as such by said defendant at the date of the execution of said deed of trust, and for a long time prior thereto.

That neither defendant Hickey nor his wife should be permitted to claim title to said premises, either under the homestead exemption laws or otherwise, for that on, to-wit, the 21st day of January, 1883, and before execution of said deed of trust mentioned in said amended answer, the said Hickey purchased or pretended to purchase the said premises from one E. M. Daggett for and on behalf of his codefendant Eliza Flowers, acting or pretending to act as the attorney in fact for said Eliza Flowers for that purpose; that prior to the date of the said purchase by said Hickey from said Dagget, to-wit, on the 17th of October, 1882, his said codefendant Eliza Flowers had executed to said Hickey a certain power of attorney in writing, whereby she had duly appointed said Hickey her lawful attorney to perform all acts and execute all instruments in writing connected with any and all business of whatever nature necessary to control and advance her interests in any matter whatsoever in the State of Texas, or anywhere else, and had delivered the same to said Hickey; and said Hickey, acting or pretending to act for and on behalf of said Eliza Flowers, made said purchase from said Daggett as aforesaid, and thereupon caused said Daggett to make his certain deed to said premises to "J. T. Hickey, attorney in fact for Mrs. Eliza Flowers," it being mentioned in said deed that the consideration for said lots in said deed mentioned was paid and to be paid by the said Hickey as attorney in fact for the said Flowers; and the said Hickey, having before his purchase procured a lease on said premises from one W. B. Heard, afterwards transferred the same to the said Eliza Flowers, thus causing all the title, both legal and equitable, as well as the right of possession to the said premises, to be vested in her, the said Eliza Flowers; and said Hickey, as well as his wife, the said Nellie F., did at the time of said purchase, and at all times prior and subsequent thereto, up to the time of the purchase by plaintiff at the sale under said deed of trust, represent and declare both by words and acts that neither he, said Hickey, nor his said wife had any right, title, or interest in said premises, either as a homestead or otherwise, but that the same belonged to said defendant Flowers, and was purchased with her money, and that the said Eliza Flowers was the legal and equitable owner of the same.

That at the time and before making said deed of trust mentioned to said City National Bank, and for the purpose of obtaining the money, or a part thereof, which was thereby secured to be paid to said bank, the said Hickey, and the said wife, and the said Eliza Flowers represented and declared to the said bank and its authorized officers that said prop-

erty belonged to said Eliza Flowers, and that neither said Hickey nor his wife had any title therein by way of homestead or otherwise; that the same had been purchased and paid for with the individual money of the said Eliza Flowers, and that the deed hereinbefore mentioned had been made to J. T. Hickey as attorney in fact for Eliza Flowers, it being intended thereby by said Hickey and wife to have the legal and equitable title thereto vested in her, the said Flowers.

That all of said facts were made known to and communicated to plaintiff before he purchased the note to secure the payment of which said deed of trust was given; and that relying upon the same and believing the same to be true, and relying upon and believing to be true divers and sundry other acts and declarations of the said Hickey and wife and Flowers theretofore made and done to the same purport and effect, to-wit, that the said property was owned by the said Flowers, and not by the said Hickey or his wife, plaintiff was induced to believe, and did believe, that the said Flowers owned the same, and so believing did, in good faith and without any knowledge that the said property would or could be claimed as a homestead by said Hickey and wife, purchase said note and pay to said bank the sum of, to-wit, eight thousand dollars therefor, and did thereafter become the purchaser thereof at the foreclosure sale under said deed of trust. He avers that the said Hickey and wife are now, and were at all the times mentioned, insolvent.

General and special exceptions were filed by Hickey and wife to that part of the plea of plaintiff setting up an estoppel: " Because it was indefinite and insufficient, etc.; it did not specify acts or declarations of the defendants. The averments as to defendant Eliza Flowers were irrelevant and impertinent, because she had disclaimed herein, and no issue exists between her and plaintiff, and her acts can not affect defendants."

The judgment does not show that these exceptions were acted on at the trial. There was a verdict of a jury on June 2, 1887, for plaintiff, with rents at $320; judgment for the lots and the brick house thereon. Defendants appealed.

The title of appellants was shown by the evidence to consist of a deed executed in January, 1885, by E. M. Daggett to appellant J. T. Hickey, conveying the property in controversy to him as "attorney in fact" for Eliza Flowers. There was conflicting evidence upon the following issues:

First. Whether defendant Eliza Flowers was the real owner of the property and had paid for it with her own money.

Second. Whether she and appellant Hickey, at the time they procured the loan from the bank, represented and stated to the officers of the bank that said Flowers owned the property and Hickey had no interest therein.

Third. Whether Hickey had always represented to appellee that he had no interest in the property.

Fourth. Whether at the time of the execution of the deed of trust

Hickey was carrying on business of any kind on the premises, using and occupying it with his family as a homestead. Appellants proved by several witnesses such occupancy in 1885, and this was denied by others.

The evidence of appellee may be epitomized as follows:

That on the 25th day of January, 1883, defendant Hickey entered into a written contract with the plaintiff, the said Hickey purporting to act therein as agent and attorney in fact for Eliza Flowers, widow, wherein it is recited that Eliza Flowers owned the property in controversy, the agreement being predicated on the fact that Hickey "had full power to do all manner of business for Mrs. Flowers." That the deed under which Hickey alone claims title was made to him as "attorney in fact for Eliza Flowers;" that the release of the vendor's lien was made in the same manner; that the lease on the house situated on the lot was made to Hickey as "agent for Eliza Flowers;" that Hickey as attorney in fact for Eliza Flowers had previously encumbered the property by putting a deed of trust on the same in her own name; that the rent was collected by Hickey as her agent; that on the third day of July, 1885, Hickey being indebted to the City National Bank, did borrow an additional sum, and did, for the purpose of securing said bank in said money, in conjunction with said Eliza Flowers, execute a deed of trust thereon in due form; that afterwards, and before the maturity of the note secured by said deed of trust, the plaintiff, for a valuable consideration, viz., $6000, purchased the said note, and the same was duly assigned to him; that the deed of trust was afterwards foreclosed by the trustee and the property was purchased by the plaintiff at the sale.

Appellant Hickey testified that the deed from Daggett was executed to him as attorney in fact for Mrs. Flowers, and her name was used therein, "in order to shield himself and property from creditors." He "did not then know that the place of business was a part of the homestead, nor that if so used it would be exempt."

The first error assigned is, that "the court erred in overruling the defendants' demurrers and special exceptions to plaintiff's plea of estoppel, because said plea shows on its face that the title to the property claimed by Hickey and wife as homestead is in J. T. Hickey, and the statements and declarations of Hickey and wife tending to defeat their homestead right in said property while they are occupying and using the same for home purposes are incompetent, irrelevant, and insufficient for the purpose; and because the said plea does not show that the City National Bank or its officers believed and relied on said statements and declarations, or were thereby induced to advance the money and accept said deed of trust on the faith thereof; and because said plea does not show that said defendants made any statements and declarations to the plaintiff, John Behrens, or intended that they should be communicated to him."

The fact is not disclosed by the record that these exceptions were over-

ruled at the trial, nor does the attention of the court appear from the judgment to have been directed to them. Consequently the well known rule that they are deemed to have been waived would apply. Rule 26, Dis. Cts. To this, however, it is replied that they were in fact overruled by the court, and that this fact is shown by the appellants' bill of exceptions taken to the refusal of the court to allow them to make proof of that fact at a subsequent term—January Term, 1888—in support of their motion to reform the judgment rendered in the case at the June Term, 1887. The bill of exceptions mentioned recites, in substance, that at the February Term, 1888, appellants moved to enter *nunc pro tunc* the court's ruling on the exceptions, and to reform the judgment, which rulings were made at a previous term. That they offered to prove that the exceptions and motion were each presented to the court at the proper time, and were not waived; that they were overruled, and appellants excepted thereto, and inadvertently the order was not entered on the judge's docket. That the judge had personal remembrance of the action by the court as alleged, but there being no memorandum in writing of said ruling, refused to hear proof or grant the order to reform said judgment, and refused also because an appeal had been perfected in the cause.

It is well settled that the right to amend a judgment is not limited to the term at which it was rendered. The power to correct the records exists in the court, not by reason of its continued jurisdiction over the subject matter, but by virtue of its continuing power over its records. Blum v. Neilson, 59 Texas, 380. In Ramsey v. McCauley, 9 Texas, 106, a judgment rendered at the Spring Term, 1850, was amended at the Fall Term, 1852, and it was there said that an amendment might be made at any time before final judgment in the Supreme Court. The difficulty arising out of the question presented relates to the character of proof proffered as a basis for the amendment.

The current of authority is that the evidence authorizing the amendment must consist of something in the record. Freem. on Judg., sec. 72. The memoranda of the presiding judge are regarded as such parts of the record as will afford data for the reformation of the decree. Ximenes v. Ximenes, 43 Texas, 454; Blum v. Neilson, *supra*. Without, however, determining whether the personal recollection of the judge, or any other evidence inferior to some written memorandum connected with the record, would afford the basis for the amendment of a judgment, and conceding that the proof offered to be made (the personal recollection of the judge that the exceptions were overruled) was sufficient, and treating them as having been so overruled, the question recurs upon the assignment that the court erred in overruling them. The exceptions were that the plea which we have set out in full showed on its face that the title to the land claimed by appellants as a homestead was in appellant J. T. Hickey, and his declarations tending to defeat their home-

stead rights, while they were occupying it as such, were incompetent, irrelevant, and insufficient, and that the plea does not show that the officers of the bank relied on them, and they were not made to appellee.

The plea excepted to alleged such statements and declarations as having emanated from appellants, to the effect that the property in controversy was not their homestead at the time of the execution of the trust deed to Newton, the president of the bank, upon which the money was obtained by appellant, which, if true, would under the authority of the following cases have estopped them from subsequently denying the same: Schwartz v. National Bank, 67 Texas, 218, and cases there cited, particularly the case of The Continental Bank v. The National Bank of the Commonwealth, 50 N. Y., 580; Tobin v. Allen, 53 Miss., 563; see also Ranney v. Miller, 51 Texas, 269.

If, however, their plea did not contain all of the elements of a technical estoppel, the averments amounted to a complete denial of the claim that the property was owned by appellants, and set forth affirmatively that it belonged to Mrs. Flowers, as a predicate for the proof subsequently made in support of such averments.

The exceptions, we think, should have been overruled.

The second, third, fifth, sixth, ninth, and eleventh assignments, as they relate to the admission of evidence in support of the plea referred to, may be grouped together and appropriately considered as one.

The second and third are, that "the court erred in admitting the evidence of A. M. Britton and John W. Wray, to the effect that J. T. Hickey and Mrs. Eliza Flowers told them at the time the deed of trust was signed and acknowledged that the lots in controversy did not belong to Hickey, but belonged to Eliza Flowers, and Eliza Flowers' money paid for them, and that the same was not his homestead, and erred in admitting the evidence of Deitz to the same effect, and the deed of trust made by J. T. Hickey, as attorney in fact for Eliza Flowers, to Schutler, for the purpose of placing before the jury the recital in the copartnership contract, to the effect that Eliza Flowers owned a valuable lease on the property, and had bought the lots in controversy out and out, when it was not shown that said recitals and instruments were made and executed for the purpose of influencing the bank to loan Hickey the money and accept the deed of trust from Mrs. Flowers, and it was not shown that the bank knew of such instrument at the time of the acceptance of the deed of trust, or was in any manner influenced thereby to accept said deed of trust."

The objection made to the evidence of Britton and Wray was that "it was incompetent, etc., where the issue is whether a deed of trust is valid upon a homestead in actual use and occupation at the time it was given." The evidence was admissible to show that it was not the property of appellant Hickey, and therefore not his homestead. The contract of part-

nership between appellant J. T. Hickey and appellee recited that " Eliza
Flowers owned a valuable lease on the property in controversy, and bought
it out and out."    So, too, the deed of trust was one executed by Hickey
as attorney in fact for Mrs. Eliza Flowers, in January, 1885, to George
Schutler and T. N. Edgel to secure the payment of $1200.   All of this
evidence, with more of a similar character, was introduced for the pur-
pose of establishing the fact that there could be no homestead claim as-
serted to the property by Hickey and wife, because it belonged to Mrs.
Flowers.

The fifth and sixth assignments relate to the same kind of testimony.

The seventh assignment is that the court erred in allowing counsel for
appellee in the court below to denounce the acts and conduct of appel-
lant Hickey as "colossal rascality."

It appears from the record that one of the plaintiff's counsel on the
trial, in addressing the jury, used this language:   "Gentlemen of the
jury, I regret that my time is so limited that I can not speak to you
longer of the colossal rascality of this man Hickey."    Counsel for ap-
pellant refers to this as a "powerful arraignment of J. T. Hickey for his
conduct in the effort to hide the property from creditors, as Hickey in
his own testimony admitted."    There was evidence that appellant Hickey
did endeavor in his embarrassment financially to place his property beyond
the reach of his creditors.    We are not willing to hold that under such
a state of facts the language used in commenting on them is such as
would authorize a reversal.

It is claimed that "the court erred in refusing to instruct the jury, as
requested by defendant, to the effect that inasmuch as no evidence had
been offered to prove that the trustee had advertised the sale of the lots,
or had sold the same in the manner and at the place provided in the deed
of trust, they should find for the defendants."

There was a provision in the trust deed that the sale should be at the
east door of the court house.   The trustee's deed recites that it was sold
"at the usual and customary place of making such sales—at the south
door of said court house."

In the first place, it may be said in reply to this assignment, that there
was no objection whatever made to the introduction of the deed of the
trustee to appellee when it was offered, and the title specially pleaded
by appellants was that the property constituted the homestead of J. T.
Hickey and wife.    No attack was made upon appellee's title because it
was not consistent with the deed of trust.    In addition to these reasons
why the assignment is not, we think, well founded, the deed of trust pro-
vides that "the recitals of the trustee's deed made by virtue of these
presents shall be full evidence of all the recitals therein contained, and
shall be a perpetual bar to the said grantors."

While it is a familiar principle that the directions and terms prescribed

in a deed of trust should be carefully observed in making a sale, we can not think that so slight a deviation (a sale at the south door instead of the east door of the same building) would affect the purchaser's title in the absence of some proof of injury occasioned the appellants thereby. This disposes of the eighth assignment, complaining of the court's refusal to charge that there was no evidence of a compliance with the recitals in the trust deed as to the place of sale.

In the ninth, tenth, and twelfth assignments complaint is made of the court's refusal to instruct the jury, as requested by the defendants in the third paragraph of their special charges, to the effect that in determining the question whether the property was the homestead of Hickey or not they should pay no attention to the declarations of either Hickey or Mrs. Eliza Flowers, if the property was at the time of the making of the deed of trust in fact occupied by Hickey and was then being used by him as his place of business.    Also that the court erred in refusing to charge the jury, as requested by defendants in their special charge No. 4, to the effect that if the property was, at the time the deed of trust was given, the business homestead of defendants, then the deed of trust would be void, and it would make no difference if Hickey afterwards ceased to do business; and erred in giving instead thereof the charge that if the property was purchased by Hickey with his own means and not with the means of Eliza Flowers, and if he was using the property as his place of business at the time the deed of trust was made, then it would be void; and in not instructing the jury that if the legal title was in Hickey, and at the time the trust deed was executed he was occupying the lots as his place of business, and had paid for them with his own means, the bank took the deed of trust at its own peril, and it would be void although the defendants may have said the property belonged to Mrs. Flowers; and in charging, in effect, that the declarations and statements of the husband concerning his homestead, and his opinion as to the title thereof, where the evidence of the title is in writing and at the same time shown, though false, will defeat the homestead rights of the wife and children, though they be innocent and in occupation and use of the premises at the time, and that, too, in a case where a creditor takes a deed of trust principally to secure an old debt.

The evidence in the case, as we have said, was conflicting.    It showed that Hickey's title to the property in controversy consisted of the deed from E. M. Daggett to J. T. Hickey as attorney in fact for Mrs. Eliza Flowers.    There was much evidence in behalf of appellants to the effect that Hickey occupied and used the lots in 1885 as a place of business; there was evidence also that Hickey paid for the property with his own means, and that no declarations were made by appellants that the property was bought with the means of Mrs. Flowers and belonged to her.

On the other hand there was evidence of the execution of the deed of

trust by Hickey in which Eliza Flowers joined; that he declared that the lots belonged to her, her money having paid for them, and that he could not therefore convey one-half interest to appellee.

There was testimony that in January, 1885, an attachment was levied on the property by Casey & Stewart, who held it as the property of Mrs. Flowers. She was made a party to the suit, and Casey & Stewart's debt was paid off with a part of the money received by Hickey from the bank when the deed of trust was executed. Hickey borrowed money from Shutler & Edgel on this property, executing a deed of trust on it in Mrs. Eliza Flowers' name, in January, 1885.

There was evidence that Hickey and Mrs. Flowers both told Britton, the president of the bank, that Mrs. Flowers owned the property, and her money paid for it, and that Hickey had only a lease on it from Heard. One room in the building on the lots was rented to Woodson in 1884 and 1885 by Hickey, who collected the rents as Mrs. Flowers' agent, and gave receipts for the same in that capacity. The contract of partnership between Hickey and appellee recited that the former was Mrs. Flowers' agent with respect to this property. The release of the vendor's (Daggett's) lien on the property was made to Hickey as her agent. Mrs. Eliza Flowers was the appellant Hickey's mother-in-law.

As we have before stated, the issues which were developed by this evidence were: 1. Whether Mrs. Flowers or Hickey was the real owner of the property. 2. Whether at the time of the execution of the deed of trust Hickey was occupying it as a place of business and his homestead. 3. Whether at the time the loan was obtained from the bank Hickey and Mrs. Flowers represented that she owned it, and that Hickey had no interest in it. 4. Whether Hickey represented to appellee that the property belonged to her, and that he had no interest in it.

Upon these issues the court charged the jury in substance that the deed from E. M. Daggett to Hickey, as attorney in fact for Eliza Flowers, placed the legal title in Hickey, and "if you believe from the evidence that at the time the deed of trust from him and Eliza Flowers to G. R. Newton, trustee, was executed, said Hickey * * * was carrying on the business of buying and selling wool, hides, and other merchandise, on his own account or for others on commission, on the lots in controversy, and that said lots were then being used by him as a place for carrying on said business, * * * you should find for the defendants."

If the lots were purchased with the means of Eliza Flowers, the deed of trust executed by her and Hickey, and the sale thereunder, would entitle plaintiff to recover.

If they were purchased with the means of Hickey, and at the time of executing the deed of trust they were used by him as his place of business, the deed of trust and sale would be void absolutely and convey no title, though Hickey subsequently ceased to use the property as a homestead.

Upon the issue made by the conflicting evidence as to the representa-tions of Hickey and Mrs. Flowers, the instructions were, substantially, that if at the time of the execution of the trust deed by them they repre-sented to A. M. Britton, president of the bank, that the property did in fact belong to Eliza Flowers, and not to Hickey, and Britton believed these representations to be true, and relying upon the truth thereof the money was loaned to Hickey, and in good faith the trust deed to secure it was taken, they would find for plaintiff; but unless Britton believed and acted on such representations, if any were made, such representations, though false, would not estop defendants from denying the truth of the representations. And if the jury believed that Britton or Newton, the officers of the bank, knew or were informed that the property belonged to Hickey, then no declarations of either of the defendants would affect the homestead rights of Hickey and wife, though false and made to se-cure the loan, if Hickey was occupying the property as his place of business.

The leading error pervading appellant's argument, and upon which his assignments are predicated, is that he treats the facts as incontrovertibly established that Hickey owned the property; that he occupied it as his place of business; that his money paid for it, and that he never repre-sented it to be Mrs. Flowers'. These facts were disputed, as shown by the evidence.

The jury were told, in effect, that the deed of trust was void if the property was the homestead, when they were instructed that "the legal title was in Hickey, and if at the time the trust deed was executed it was used as his place of business, they would find for appellants."

There was conflicting evidence as to whether the property was a part of the homestead—that is, used as a place of business. There was tes-timony, as we have seen, that it was not. The jury believed this. Un-questionably, if the legal title was in Hickey and it was not his homestead, the trust deed executed by him in this case was valid, and appellee was entitled to recover.

Under the charge appellants were allowed to recover if the property was purchased by Hickey with his own means and it was used as his homestead. There was evidence in support of this. So too there was evidence to the contrary. The jury believed the latter. Unquestionably, if the property was bought by Hickey with his own means—in other words, was his property—and it was not so used, the deed of trust was valid, and appellee could recover.

Again, the jury were told, in effect, that if the lots were bought with Mrs. Flowers' means, and for her, although the legal title was in Hickey, the superior equitable title was in Mrs. Flowers, and she executed the trust deed, appellee was entitled to recover.

As we have seen, there was evidence fully authorizing the jury to believe.

that the property belonged to Mrs. Flowers; that she executed the trust deed is not disputed.   If so, and the jury so found, there was no question of homestead rights in the case.

If the property belonged to Hickey and was used and occupied by him as a homestead, the declarations might not estop appellants, whether Britton or Newton knew that fact or not; and the latter part of the charge is therefore not correct.   But we do not think under the facts of this case that it operated to the injury or prejudice of appellants.   The charge as a whole was, we think, more favorable to them than they were entitled to.

The deed from E. M. Daggett to J. T. Hickey, as attorney in fact for Eliza Flowers, vested the title in her.   Paschal v. Acklin, 27 Texas, 192; Smith v. Brown, 66 Texas, 544; Giddens v. Byers, 12 Texas, 79, 80.   If, notwithstanding the authorities cited, such was not its effect and the legal title was in Hickey, still there was abundant evidence to show that the superior equitable title was in Mrs. Eliza Flowers and that no homestead rights vested in the appellants to this property.   Such was the effect of the jury's finding.   If the charge last referred to was erroneous, as is contended, it could not, we think, have affected the verdict, which was, eliminating this from the case, amply supported by the facts.

We think the judgment should be affirmed.

*Affirmed.*

Adopted December 20, 1889.