## W. A. BLAIR AND ANOTHER v. G. GAY AND ANOTHER.

1. Administrators of a deceased lunatic obtained in the probate court (as organized in 1866) a decree for money against a former guardian of the lunatic's property ; and afterwards, but within two years, they brought suit in the district court on the guardian's bond to recover the amount of the decree from the guardian and his sureties. · The defendants answered that the decree was rendered without any appearance or answer by the guardian ; that the guardian was not indebted to the estate ; that the decree was based on Confederate money collected by the guardian from an insolvent debtor of the lunatic ; and that the guardian was entitled to credits not allowed him in the decree ; and they filed a tran-

script of the proceedings of the probate court, and prayed that its decree be revised and corrected. *Held*, that this line of defense was competent, the two years allowed by Article 3922, Paschal's Digest, for the revision by the district court of the probate court's decree being unexpired, and it being immaterial in what manner the appearance of the parties was obtained in the district court.

2. A policy pervades our whole system of jurisprudence, which requires parties to settle all their controversies in a single suit, if practicable. (By Morrill, Chief Justice, citing Haggerty v. Scott, 10 Texas, 525 ; Ponton v. Bellows, 22 Texas, 681 ; and Henderson v. Morrill, 12 Texas, 3. )

3. The defense above indicated was a direct and not a mere *collateral* attack upon the decree of the probate court. (By Denison, Justice.)

4. The Constitution of 1866 and Article 3922, Paschal's Digest, conferred on the district court a general control and original as well as appellate jurisdiction over all matters for settling the accounts of guardians, etc.; and it was immaterial in what manner, and whether by writ or otherwise, a transcript of a probate court's proceedings in such a matter was brought before a district court. (By Denison, Justice.)

ERROR from De Witt. Tried below before the Hon. Wesley Ogden.

Blair was guardian of Morrison, a lunatic. Morrison having died, Gay and wife became administrator and administratrix of his estate. They filed their petition in the county court against Blair for a final settlement of his accounts as guardian; and herein such proceedings were had, Blair not answering to the merits, that a decree was rendered by the county court in November, 1867, against Blair, declaring him indebted to the estate of his late ward in the sum of four hundred and fifty-seven and fifteen-one-hundredth dollars, and directing him to pay that sum over to Gay and wife, as legal representatives of Morrison, and also to deliver to them all effects, etc., belonging to the estate of Morrison and in his hands as guardian, and dismissing him from that trust.

In September, 1868, Gay and wife, as administrator and administratrix of Morrison, brought this suit in the district court against

Blair, and the sureties on his bond, as guardian, to recover the amount of the decree of the county court. The cause was dismissed for want of service, as to all the sureties except Wheat. Blair and Wheat each answered, impugning the decree of the county court, alleging that it was rendered without an appearance or answer filed; that it was based upon the receipt by Blair of Confederate money from an insolvent debtor of his ward, and that Blair was entitled to certain credits, which had not been allowed; and prayed that the district court would, in this cause, revise that decree. The plaintiff excepted to so much of the answer as attacked the decree of the county court. The exceptions were sustained; and it is for alleged error in that ruling that the case is brought here for revision. The defendants not answering further, and the facts and law being both submitted to the court, there was judgment for the plaintiffs for the amount of the decree and interest.

*H. Clay Pleasants*, for plaintiffs in error.—That Blair was not liable for Confederate money received by him in payment of a debt due the estate of his wards is not an open question. (See Hamilton *et al.* v. Pleasant's administrator, Galveston term, A. D. 186–; Kliberg v. Bonds, Galveston term, A. D. 1869.)

The time in which the case might have been removed by *certiorari* from the probate court to the district court had not elapsed when the defendants filed their answers, together with the transscript from the probate court, and prayed that the judgment of the probate court be revised and corrected; and had the matters and things set out in Blair's answer been presented in a petition for *certiorari*, it will not be contended, we think, but that the writ would have been granted. The writ of *certiorari* is as much a matter of right as the remedy by appeal. (See Poag v. Rowe, 16 Tex. R., and Ray v. Powers, 14 Tex. R.) The office of the writ of *certiorari* is to bring up the record from the lower to the

higher court.  In this case the defendants filed the record in
court, and made it a part of their answers, and thus the whole
subject matter in controversy was presented to the court; and we
submit that it was the duty of the district court to revise the
action of the probate court, and if there was error in its judg-
ments to correct the error, and give appropriate relief to the de-
fendants.    The whole case was before the court, and the mere
issuing of the writ of *certiorari* was not necessary to give the
court jurisdiction.    The district court is clothed with all the
powers, both of a common law court and a court of chancery, ex-
cept so far as its powers may be restricted by the Constitution and
the statute law.  (See Cain v. Cain, 17 Tex. R.; Purvis v.
Sherrod, 12 Tex. R.; Smith v. Smith, 11 Tex. R.; Newsom v.
Chrisman, 9 Tex. R.)   The defendant, Blair, was guilty of no
laches; he had two years in which to sue out a writ of *certiorari*
and bring the judgment of the probate court into the district
court, and have the same revised and corrected.   Instead of pur-
suing this remedy he waits until he and his sureties are sued upon
this judgment in the district court, and he then (the two years not
having yet expired) files the transcript, makes it a part of his
answer, and prays that the proceedings of the probate court be
revised and corrected.   We submit, with all deference to the court
which tried this cause, and the learned counsel who argued it, that
the defendant, Blair, had his election either to sue out the writ of
*certiorari*, or to show as matters of defense to this suit error in
the judgment of the probate court. The law abhors a multiplicity
of suits; but if the position of counsel for the defendants in
error be correct, there must of necessity be two if not three suits
growing out of this judgment in the probate court, to determine
the rights and liabilities of all parties in interest.

But, grant that the defendant, Blair, is precluded in defense to
this suit from showing that the judgment in the probate court,
which constitutes the plaintiffs' cause of action in the district

court, is erroneous, and that he is to be restricted in his defense to the plea "*nul tiel* record," is this rule to be applied to the defendant, Wheat, who was no party to the proceedings had in the probate court? Is Wheat, the surety of Blair, on Blair's bond for the faithful performance of his duties as guardian, to be held liable to the plaintiffs for an act of Blair's, which, in the judgment of the law, is no breach of that bond? Is Wheat to be held bound to pay to the plaintiffs the sum of four hundred and fifty dollars because this sum was collected in Confederate States' treasury notes, by Blair, on a judgment rendered in his favor as guardian, against one who was and is insolvent? To state this question is to decide it in the negative.

*Glass & Callender*, for defendants in error.—The questions presented by the record seem to be—

First—Was the decree of the county court conclusive as to Blair?

Second—Was it also conclusive as to Wheat, his surety?

Third—If not conclusive as to both, did the answers present any good defense to the action?

First—It seems scarcely necessary to make an argument to show that the decree of the county court was conclusive as to Blair. The court certainly had jurisdiction of him and of the subject matter. He accepted service. He appeared and filed an answer, in the nature of a plea of abatement to the persons of the plaintiffs; but its allegations were impertinent and irrelevant, and it was not supported by affidavit, nor was there any attempt to sustain it by proof. It was a mere sham, but it shows that Blair was in court. The cause was continued several terms to enable him to answer on the merits and make his final settlement; but he neglected or refused to do so, and judgment was given against him upon the evidence adduced before the court. That judgment or decree is certainly conclusive until reversed; and it could only be

XXXIII—11

reversed in one of the modes provided by statute—by appeal or *certiorari;* and Blair having neglected to appeal or sue out a writ of *certiorari*, cannot, we think, have the decree reviewed in this irregular collateral way. Among other objections to such a proceeding is this : that it would give a party the benefit of an appeal without bond, or of a *certiorari* without affidavit.

Second—But we contend, that there being no allegation of fraud, neither Blair nor Wheat can be heard to impeach that decree.

" If a person become surety for the guardian's care of a minor's estate, he is understood to be bound in *omnem causam*, although not so expressed, and therefore he is liable to all such balance and interest as may be decreed against the guardian." (Burge on Suretyship, 57.)

"A final settlement of the accounts of guardian, made in the orphan's court, showing the amount of his indebtedness to his wards, is conclusive alike on the guardian and his securities, unless the securities can impeach it for fraud." (Chilton v. Park, 15 Alabama Reps., 671.)

The liability of the surety of a guardian is so analogous to that of the surety of an administrator, that the same law must govern both. What that liability is was well expressed by the learned Judge Robertson of Kentucky, in the case of Hobbs & Churchill v. Middleton, (1 J. J. Marsh, 179,) as follows : " The responsibility of securities being incidental and collateral to that of the principal, a judgment in favor of a creditor against the administrator, concludes the securities as to the existence and character of the debt thus ascertained, and cannot be questioned or reviewed in a suit on the official bond."

" In an action on an administration bond against the administrator and his sureties, for a refusal on his part to pay a judgment recovered againt him, such judgment, if not obtained by fraud or collusion, is conclusive upon the sureties, in regard to all matters

of defense affecting the merits of the claim as between the parties to such judgment." (Heard v. Lodge, 20 Pick., 53.)

"An order of a probate court against an administrator, ordering him to pay over money in his hands to an heir, is conclusive; and if not complied with entitles the person, in whose favor it is made, to recover upon the administrator's bond, against principal and security. The suit upon the bond is a collateral action, founded as well upon the judgment as upon the bond; and when that judgment is offered as evidence, it cannot be inquired into except for fraud. The surety, although not a party to the first proceeding, is bound by it." (Ralston v. Wood, 15 Ill. Reps., 159, cited in U. S. Dig., vol. 9, A. D. 1855, 285.)

Third—But even if the decree of the county court was not conclusive, the ruling of the court in sustaining the exceptions was nevertheless right, for the answers presented no defense to the action. The defendants made the proceedings in the county court a part of their answer, and taking the whole together they show that Blair had due notice of the proceeding; that the county court had evidence, in shape of his own receipts, that he had received for his ward the money the court ordered him to pay over; that one of the receipts showed that a part of this money was received by him in Confederate notes, and it is alleged that the whole amount was received in that currency; but it appears that it was received at par, and there is no allegation that it was worth less than par at the time.

Now, whatever may have been heretofore held in regard to contracts for and payments in Confederate money, we assume that the decision of the United States Supreme Court, in the case of Thorington v. Smith & Hartley will be received and followed in all the States as the authoritative adjudication on the subject; and that decision is, that contracts for the payment of Confederate money are not illegal or void, except when made with actual intent to aid the rebellion. It follows from this, that payments in

Confederate money were not nugatory, but that parties might receive it at par, or at any other rate upon which they could agree. Now, the answers in this case show that Blair received the Confederate money at par, and there is no allegation in the answers under which it could have been proved that the money was worth any less than par. Consequently the answers showed the decree of the county court to be right, or, certainly, they did not show it to be wrong, and therefore presented no good defense to the action even if that decree had been open to inquiry.

MORRILL, C. J.—The only matter for adjudication in this case is, whether a defendant in a suit in the district court, based upon a judgment rendered against him in the county court, upon final settlement as a guardian of the property of a lunatic, at the instance of the same plaintiffs, can set up as a defense, within two years after the rendition thereof, errors in the judgment so rendered.

There is no question but that the defendant could, by *certiorari*, have the the judgment removed to the district court for revision ; and also, that the parties antagonistic would be the same as in the case before the court. (Art. 3992, Paschal's Digest.) In that case, the same identical questions would be raised for adjudication, that the defendant seeks to raise in the case as it is, having the same parties, the same testimony, and before the same tribunal. Until two years had elapsed, the judgment of the county court was similar to an interlocutory judgment in the district court, which the defendant could attack in any manner he might choose, before the district court, having cited the proper parties, and he can do the same thing if the opposing party should voluntarily appear, or, as is the present case, cite him to appear and show cause why execution shall not issue thereon.

Article 1441 provides, that " the defendant may plead as many several matters, whether of law or fact, as he shall think necessary for his defense, and which may be pertinent to the cause," etc.

The policy that pervades our whole system of jurisprudence requires parties to settle in a single suit all their controversies practicable. (See Haggerty v. Scott, 10 Tex., 525; Ponton v. Bellows, 22 Tex., 681; Henderson v. Morrill, 12 Tex., 3.)

The judgment is reversed and cause remanded.

DENISON, J.—This suit was brought at the fall term, 1868, of the District Court of De Witt county, by Gilbert Gay and Eliza Gay, as administrator and administratrix of the estate of John N. Morrison, against Wm. A. Blair and the sureties on his bond as guardian of the estate of the lunatic, John N. Morrison, to recover the sum of $457.15, which had been decreed and ordered by the Probate Court of De Witt county, at its November term, 1867, to be paid by Blair to the plaintiffs. Suit was dismissed as to all the sureties of Blair, except T. J. Wheat.

Blair and Wheat filed separate answers, each impugning the decree of the county court, alleging that it was rendered without an appearance, or answer filed by the guardian; that it was based upon the receipt by Blair of Confederate money, from an insolvent debtor of his ward, and that Blair was entitled to certain credits that had not been allowed.

A certified transcript of the proceedings in the probate court was filed as a part of their answers, and each prayed that the district court would review, revise and correct the decree and order of that court. The plaintiffs excepted to so much of the answers as attacked the decree and order of the county court. The exceptions were sustained, and for error in that ruling, the cause is brought to this court for revision.

It is contended by counsel for defendants in error, that the decree of the county court is conclusive as to the defendant, Blair, and his sureties, until reversed: and that it could *only* be reversed in one of the modes prescribed by the statute, viz: by appeal or *certiorari*.

Article four, section six, of the Constitution of 1866 gives to the district courts, " *original* and appellate jurisdiction and *general control* over the county court established in each county, for appointing guardians, granting letters testamentary and of administration, for settling the accounts of executors, administrators, and guardians, and for the transaction of business appertaining to estates."    Article 3922, Paschal's Digest, provides that, " any settlement of the account of any guardian may be revised and corrected in the district court of the county, at any time within two years after such guardian has ceased his duties, upon proof that there was fraud or mistake in such settlement."

It seems from the Constitution and statute above quoted, that the district court has *general control*, and *original* as well as appellate jurisdiction, " over all matters for settling the accounts of executors, administrators, and guardians ; " and it matters not in what manner a certified copy of the proceedings of the county court may come before it, whether it be in answer to a writ or otherwise.

In this case the district court had jurisdiction, and should have reviewed the proceedings of the county court. The attack was direct and not collateral.

The judgment of the district court in sustaining the exceptions to the answers was erroneous.

The judgment is therefore reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.