KNIGHT v. WAGGONER et al. (No. 1514.)

(Court of Civil Appeals of Texas. Amarillo. April 30, 1919. Rehearing Denied June 25, 1919.)

1. INSANE PERSONS ⬤⟞94(1)—GUARDIAN AD LITEM—PURPOSE OF APPOINTMENT.

The purpose in the appointment of a guardian ad litem is to secure the services of a disinterested person who will see that all matters affecting the interests of the party under legal disability are fully presented to the court.

2. INSANE PERSONS ⬤⟞94(1)—GUARDIAN AD LITEM—DUTY OF.

The guardian ad litem representing an insane defendant should make no admissions against the interest of defendant, but should require that proper legal proof be made of the facts entitling plaintiff to the relief which he seeks.

3. INSANE PERSONS ⬤⟞94(1)—GUARDIAN AD LITEM—DISQUALIFICATION—COMMISSIONS ON SALE OF LAND.

The appointment as guardian ad litem of insane person being sued in trespass to try title by grantees to whom she had conveyed land while insane, of person who had received a commission on the sale of the land to such grantees, was not calculated to develop that full and disinterested presentation of the rights of the insane person that is to be desired in trial of such case.

4. INSANE PERSONS ⬤⟞100—CONVEYANCES—RELIEF AGAINST JUDGMENT.

Where court, in action against insane person by grantees to whom she had conveyed land while insane, rendered judgment confirming conveyance, upon admissions by her guardian ad litem that the conveyance was a fair transaction, and that confirmation thereof would be for best interests of his ward, and where fair price had not in fact been paid for the land, insane person held entitled to relief against the judgment.

5. JUDGMENT ⬤⟞270—RENDITION—ENTRY.

The rendition of a judgment is to be distinguished from the entry thereof.

6. JUDGMENT ⬤⟞299(1) — JURISDICTION OF COURT—ADJOURNMENT OF TERM.

Upon adjournment of term, the jurisdiction or power of the court over judgment, rendered during the term, on its merits is exhausted.

7. JUDGMENT ⬤⟞297—ENTRY—CORRECTION—POWER OF COURT.

An error in the ministerial entry of the judgment may be subsequently corrected by a proceeding in the same case on the initiative of the court or a motion of the parties; the power to correct the record existing in the court, not by reason of continued jurisdiction over the subject-matter, but by virtue of its continuing power over its record.

8. JUDGMENT ⬤⟞294—CORRECTION OF ENTRY—MOTION TO CORRECT RECORD—"ACTION."

A motion to correct record of judgment is not an "action," and does not raise question of correctness of judgment on the merits; the only issue being whether the judgment as actually rendered was accurately recorded.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Action.]

9. JUDGMENT ⬤⟞342(1)—SETTING ASIDE—INDEPENDENT ACTION.

A judgment can be set aside after adjournment of term only in an independent action brought for that purpose.

10. JUDGMENT ⬤⟞294 — MOTION TO CORRECT RECORD—NATURE OF PROCEEDING—ADJUDICATION ON MERITS.

Where answer to motion to correct entry of judgment raises issue of correctness of judgment on the merits, and court actually hears and tries issues and renders judgment thereon, the proceeding and judgment may properly be regarded as a proceeding in an independent action, though it was filed in and took the number and style of the original suit.

11. JUDGMENT ⬤⟞338—ACTION TO SET ASIDE —OTHER REMEDY — APPEAL — MOTION FOR NEW TRIAL.

That defendant had the right to make motion for new trial or appeal from judgment did not preclude her from instituting separate action to set aside the judgment, where such motion or appeal would have brought up for review only irregularities, and would not have gone to the real merits of her case.

Hall, J., dissenting.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by Olga V. Knight, as guardian of the estate of Mrs. C. E. Rogers, a lunatic, against W. T. Waggoner and another. Judgment for defendants, and plaintiff appeals. Reversed, and cause remanded.

M. M. Hankins and W. T. Perkins, both of Quanah, and A. H. Carrigan, of Wichita Falls, for appellant.

Miller & Miller, of Ft. Worth, and J. T. Montgomery, of Austin, for appellees.

BOYCE, J. This suit was brought by appellant, Olga V. Knight, as guardian of the estate of Mrs. C. E. Rogers, a lunatic, against appellees, W. T. Waggoner and Joe Terry, to recover certain land in Wilbarger and Wichita counties. The suit was filed in the district court of Wichita county on February 6, 1911, and is numbered 4043 on the docket of said court. In addition to the regular allegations of a suit in trespass to try title, plaintiff specifically sought to set aside a conveyance of said land made by the said Mrs. C. E. Rogers to Joe Terry, dated March 6, 1906, and a judgment of the district court of Wichita county dated January 31, 1907, rendered in cause No. 3607, in favor of the said W. T. Waggoner and against the said Mrs. C. E. Rogers for said land and confirming said deed. Plaintiff alleged that the said Mrs.

C. E. Rogers had been for a long time prior to the sale of said land and up to the time of the trial of the present suit continuously insane; that she was incapable of making a valid contract for the sale of said property; that this fact was known to the said W. T. Waggoner and Joe Terry, but said persons, for the purpose of procuring the title to said property for less than its true value, and in a manner not authorized by law, procured said conveyance from said insane person to be made to the said Terry upon an insufficient consideration; that the said Terry was acting for the said W. T. Waggoner in such matter, and on the same date of conveyance from Mrs. Rogers conveyed said land to said Waggoner, who in fact paid the consideration therefor; that the said W. T. Waggoner on October 12, 1906, as a part of the said plan to acquire said land and to cover up the fraud by judicial sanction, instituted said suit No. 3607, and procured judgment to be rendered therein; that the plaintiff in said suit fraudulently and falsely represented to the court that Mrs. Rogers was sane at the time of the conveyance by her, and that the sale was in all things fair; that upon said hearing L. H. Mathis was appointed guardian ad litem for Mrs. Rogers; that he was disqualified from acting by reason of being interested in said suit, and made no defense thereto, but judgment was entered upon admissions made by the said guardian ad litem upon hearing of said cause. The plaintiff tendered to the defendant Waggoner the amount paid for said land. The defendant, in addition to exceptions and general denial, pleaded res adjudicata, setting up in detail in support of this plea the facts as we shall hereafter state them.

Upon trial the court instructed the jury peremptorily to find for the defendant; this charge being "founded upon his conclusion that no testimony whatever has been introduced tending to raise the issue of fraud in the rendition of the judgment in cause No. 3607."

Evidence was introduced upon the trial that would have warranted the jury in finding the following facts: Mrs. Rogers conveyed the land to Joe Terry by deed dated March 6, 1906. Terry on the same day conveyed the land to defendant Waggoner, who was in fact the purchaser from Mrs. Rogers. The deeds from Mrs. Rogers to Terry and from Terry to Waggoner were in the handwriting of L. H. Mathis, and the acknowledgment of Terry to the deed made by him was taken by the said Mathis. The consideration from Waggoner was paid to Mathis for Mrs. Rogers, and he received a commission of $150 out of such proceeds. Mrs. Rogers was at this time, and had been for several years prior thereto, insane, and this fact was known to the defendant Waggoner. The land was worth from $5 to $10 more per acre than

the price paid for it—$10 per acre. Mrs. Rogers, after the sale, did not vacate the premises, and on October 6, 1906, Waggoner filed suit, No. 3607, against her for the recovery of the land; the petition being in the regular form of trespass to try title. No mention of the insanity of the defendant was made in this pleading, but on January 23, 1907, plaintiff's attorney suggested to the court that the defendant was insane; whereupon the court appointed L. H. Mathis as guardian ad litem for Mrs. Rogers. Plaintiff's attorney testified that he did not remember that he suggested that Mathis be appointed, though he knew that such attorney had been representing Mrs. Rogers in certain transactions, and he may have done so. On January 31, 1907, said guardian ad litem filed an answer, setting up the fact that the defendant still had on hand "the entire proceeds of the sale to Joe Terry, less certain small amounts actually used by her for the necessary expense incident to the consummation of the sale of said land"; that the defendant at the time of the answer was of unsound mind as to certain subjects, and should not be intrusted with the exclusive possession of said money; that the sale of the land to Terry was a fair transaction; that the defendant, at the time, understood the nature and consequences of her act therein; that she had received the reasonable value of said land; and that it was to her best interests that said sale should be confirmed. In a supplemental petition replying to this answer plaintiff alleged that Joe Terry purchased the land, paying full value therefor in good faith, believing defendant was sane, and that after Terry procured the deed he sold the land to plaintiff. In this pleading a statement is made of the amount paid Mrs. Rogers and the disposition she had made of the same, and it appears therefrom that the "sum of $150 was paid to L. H. Mathis as a commission on the sale of said land, he acting as agent for the defendant." Plaintiff again prayed that he recover the land, or in the alternative that he have judgment for the money paid defendant and it be decreed to be a lien on said land. On the trial of said cause the deeds from Mrs. Rogers and from Terry to Waggoner were introduced, and the guardian ad litem made a verbal statement, whether under oath or not does not appear, to substantially the same effect as made in the answer filed by him. No other evidence was introduced, and on January 31, 1907, judgment was entered in which it was found by the court:

That "Mrs. C. E. Rogers was sane at the time of the execution of the deed to Terry; that said sale was in all respects just and fair and free from any fraud, and was made in good faith by the said Terry, and that said land was sold for its full and fair value, and that it is for the best interest of the plaintiff (it is apparent that the use of the word 'plaintiff' here

instead of 'defendant' was the result of clerical error) that the said trade be not canceled."

And upon such finding judgment was rendered for the plaintiff. Appellant was appointed guardian of the person and estate of Mrs. Rogers, who was at the same time adjudged to be a lunatic, in February, 1910.

The facts on which appellee founded his plea of res adjudicata are as follows: There was a mistake in the entry of judgment in cause No. 3607, as rendered and entered on January 31, 1907, the land being described therein as section 92, instead of section 2, the proper description. After the filing of this suit, No. 4043, plaintiff, in cause No. 3607, filed a motion to correct said entry, serving notice of said motion on Mrs. Rogers, L. H. Mathis, guardian ad litem in cause No. 3607, and on Mrs. Knight, the legal guardian of Mrs. Rogers. On the hearing of said motion the court appointed M. M. Hankins guardian ad litem to represent Mrs. Rogers in such matter. The guardian ad litem so appointed and the appellant filed separate answers to said motion, though they were the same in substance. Following a general denial and plea of limitations, these answers set out in what is termed a "special answer" to said motion substantially the same facts as are alleged in the petition in this cause, and prayed that said deed and the judgment in cause No. 3607 be canceled and set aside, and that defendant recover title and possession of said land. In the answer filed by appellant the pendency of said cause No. 4043 was suggested, and the court was asked to consolidate the "suit to correct the judgment with said cause No. 4043." These answers were filed on July 18 and 19, 1911. No reply to the answer was filed by the defendant. On hearing of the motion to correct judgment these answers, in so far as issues were presented by the special allegations referred to, were apparently ignored. The only evidence offered on the hearing of the motion was as to mistake in the entry of the judgment, and on July 19, 1911, the court sustained the motion to correct the judgment in cause No. 3607, and entered an order to such effect. This order, among other things, recited:

"On this day came on to be heard by the court the motion hereinbefore filed by the plaintiff * * * to correct the entry upon the minutes of this court· of the judgment herein rendered on the 31st day of January, 1907, so that the entry upon the minutes of said judgment should conform to the judgment actually rendered by the court, * * * and the court, having heard said motion, the evidence introduced, the argument of counsel, and being fully advised as to the law, is of the opinion that said motion is well taken and should be sustained. It is therefore ordered, adjudged, and decreed by the court that the entry of the judgment rendered herein * * * be corrected * * * so as to hereinafter read as follows."

M. M. Hankins, as guardian ad litem for Mrs. Rogers, appealed from "the action of the court in sustaining said motion," and said action of the court was finally affirmed by the Supreme Court. Waggoner v. Rogers, 108 Tex. 328, 193 S. W. 136.

[1-4] We are of the opinion that the court committed error in giving the peremptory instruction for the defendant unless such action can be sustained on account of the facts set out in the defendant's plea of res adjudicata. The purpose in the appointment of a guardian ad litem is to secure the services of a disinterested person who will see that all matters affecting the interests of the party under legal disability are fully presented to the court. Cyc. vol. 22, p. 651; R. C. L. vol. 14, pp. 287–289. The guardian ad litem should make no admissions against the interest of the defendant, but should require that proper legal proof be made of the facts entitling the plaintiff to the relief which he seeks. White v. Joyce, 158 U. S. 128, 15 Sup. Ct. 788, 39 L. Ed. 921; Rankin v. Schofield, 70 Ark. 83, 66 S. W. 197; Ralston v. Lahee, 8 Iowa, 17, 74 Am. Dec. 291; Chaffin v. Kimball, 23 Ill. 36; R. C. L. vol. 14, pp. 289–291; Cyc. vol. 22, p. 663. Whether the guardian ad litem appointed in this case was absolutely disqualified or not, we think it is true as a general rule that such representation of the person under disability in the investigation of the transaction by one so connected with it as was the guardian ad litem in this instance, would not be best calculated to develop that full and disinterested presentation of the rights of the ward that is to be desired in trials of cases of this kind. It is apparent that there was no real trial by the court in cause No. 3607 of the facts that determined the rights of the insane woman; these were really ascertained and determined by the guardian ad litem, and the court's judgment was based on his conclusions. We need not decide whether these facts, standing alone, would require a reversal of said judgment on appeal or the setting aside thereof in a direct proceeding, but when in addition it is shown that the defendant was in fact insane, that she did not receive a fair price for the land, that plaintiff knew these facts, but pleaded the contrary, and took a judgment on conclusions by the court based on false information as to the facts, we are of the opinion that sufficient ground exists for relief against the judgment. Day v. Johnson, 32 Tex. Civ. App. 107, 72 S. W. 426; Lumpkin v. Williams, 1 Tex. Civ. App. 214, 21 S. W. 967; Cannon v. Hemphill, 7 Tex. 184; Swearingen v. Swearingen, 193 S. W. 450–452; Frieseke v. Frieseke, 138 Mich. 458, 101 N. W. 632; Cooper v. Greenleaf, 84 Kan. 499, 114 Pac. 1086, 35 L. R. A. (N. S.) 1094–1096; 22 Cyc. 701.

We think it fair to the court trying said cause No. 3607 to say that the guardian ad litem's connection with the trade did not appear at the time he was appointed, and thereafter appeared only incidentally in a sup-

plemental petition filed by plaintiff, and may never have been called to the court's attention. It should also, in fairness, be added that the evidence as to the insanity of Mrs. Rogers and the value of the land is not uncontroverted. The evidence is such that the jury could have found that the sale and its confirmation was a fair transaction. We have only detailed the evidence as it tended to support plaintiff's right to have the case submitted to the jury. But good faith on the part of the attorney and the guardian ad litem would not necessarily defeat the action. Such persons might be the innocent means of the perpetration of fraud by plaintiff.

We come then to consider the questions presented by the plea of res adjudicata. Two questions occur in the consideration of this defense: First, whether the judgment entered on the motion to correct judgment in cause No. 3607 is to be conclusively presumed to have disposed of the issues presented in the appellant's special answer to the motion; second, whether, independent of the answer or any judgment thereon, the appellant would be precluded from maintaining this suit because of failure to take any action by way of motion for new trial or appeal from the judgment in said cause No. 3607. An understanding of the respective rights of the parties as they existed at the time of the filing of the motion and the procedure by which such rights are to be enforced is, we think, essential to an answer to these questions.

[5-8] The final judgment in cause No. 3607 was rendered, as distinguished from the entry thereof, on January 31, 1907. Coleman v. Zapp, 105 Tex. 491, 151 S. W. 1041. Upon adjournment of that term "the jurisdiction or power of the court over it [the judgment] on its merits is unquestionably exhausted." Milam County v. Robertson, 47 Tex. 231. If an error in the ministerial entry of the judgment were made, this might be subsequently corrected by a proceeding in the same case on the initiative of the court or a motion of the parties, but "the power to correct the record existed in the court, not by reason of its continued jurisdiction over the subject-matter, but by virtue of its continuing power over its records." Hickey v. Behrens, 75 Tex. 488, 12 S. W. 631. The nature and effect of the motion in cause No. 3607 to correct the record of said judgment is clearly stated in the opinion in Coleman v. Zapp, 105 Tex. 491, 151 S. W. 1041, thus:

"A proceeding of such character, whose only purpose is to have the judgment entry speak truly the judgment as rendered, neither asserts nor seeks the enforcement of any new right; it presents no issue between the parties except in respect to the accuracy of the record and otherwise involves the adjudication of nothing between them. It is powerless to reopen the controversy as closed and sealed by the judgment and makes no such attempt. The inquiry under it is not what judgment might or ought to have been rendered, but only what judgment was rendered; and such is the sole issue to be determined. If an amended or corrected entry be ordered, the status of the parties and their relative rights, as decreed and fixed by the judgment, remains untouched and unaltered, in no sense adjudicated anew, but only judicially evidenced as originally determined."

[9] The proceeding is not an "action." It is a mere motion in the case to be summarily disposed of by the court without the intervention of a jury. Hester v. Baskin, 184 S. W. 727; Eddleman v. McGlathery, 74 Tex. 280, 11 S. W. 1100. On the other hand, the appellants attacked the judgment as rendered as being wrong on the merits and sought to set it aside because it was claimed that the facts set up in the answer showed that this was true; and, while these facts are set up in the form of an answer, they could only be available as in support of affirmative relief, which is in fact prayed for, against the judgment rendered; and the answer, though not expressly so denominated, is to be really regarded as in the nature of a cross-action. The relief sought therein could only be secured by an independent "action," brought for the purpose of setting aside the former judgment in cause No. 3607, and in "such case the new suit has all the incidents of an original action, and upon every issue involved either party is entitled to a regular trial before a jury upon testimony offered in the manner usual upon the hearing of causes upon their merits." Eddleman v. McGlathery, 74 Tex. 280, 11 S. W. 1100; Coleman v. Zapp, supra; Rogers v. Dixon, 176 S. W. 865. See, also, Wallis v. Stuart, 92 Tex. 568, 50 S. W. 567. We quote again from the opinion in Coleman v. Zapp, supra:

"These two cases [we interpolate the respective proceedings of the parties in this case] well illustrate the distinction which lies clearly defined between a suit to correct a judgment because of the mistake of the court in its rendition, whereby an improper judgment is rendered, but its entry is in accordance with the rendition, and a proceeding to correct or supply the minutes of the court so as to have them truly recite the judgment actually rendered. To correct in the trial court, after adjournment of the term, a judgment as rendered, an independent action is necessary, as its jurisdiction of the case is at an end. In the latter instance the court may, at a subsequent term, of its own motion or upon the application of parties, order the proper entry because the inherent power that it possesses as a court over its own records endures for the sake of their verity."

[10] We do not mean to say that, if the appellees had answered the issues tendered in appellants' answer to the motion, and the court had actually heard and decided the issues thus made and rendered judgment thereon, we would not consider the matter as being finally disposed of. In such case, under our liberal system of practice, the proceeding and judgment thereon might properly

be regarded as a proceeding in an independent action, though it was filed in and took the number and style of the original suit. But the filing of the pleading as a motion, or an answer to a motion or as a cross-action in the original case, would not destroy its nature, and this brings us back to the first question as to whether it is to be implied that this independent action is disposed of by the entry of an order on the motion in the case proper to correct the judgment. We think not. In support of the contrary view that line of authorities is relied upon which asserts that in the ordinary suit a cross-action is presumed to be disposed of by a final judgment in the case, "by necessary implication only, without expressly mentioning it." Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161; Hermann v. Allen, 103 Tex. 382, 128 S. W. 115. The decision in these cases is placed on the ground that by statute final judgment in the case must dispose of all the issues, and a general judgment entered therein is to be taken as a final judgment, disposing of all the issues by implication, if not expressly mentioned or reserved. We do not think these decisions applicable to this case. We have here in effect two cases, original cause No. 3607. Final judgment had already been rendered in this case, and the only jurisdiction that remained was to act on the motion to correct said judgment as entered. The answer to the motion or cross-action, in so far as it attacked the judgment on its merits, presented another independent action. These answers were filed on July 18 and 19, 1917, respectively. The appellees made no reply thereto. It may be that they would not have been required to do so, except after service of citation, and even then might possibly have successfully resisted an effort to have the summary disposition of the motion in cause No. 3607 complicated and delayed by the trial of this independent suit. Appellees' attorneys and the court gave no attention to this effort of appellants to bring this new case into the old one; for on July 19, 1917, the court, without referring to these issues at all, entered the order granting the motion to correct the original judgment as entered. The order made under these circumstances does not appear to us to have any analogy to the "final judgments in the case" being considered in the cases decided by the Supreme Court, above cited. The reason for the rule announced in those cases does not, in our opinion, apply here, and under the circumstances we are unwilling to hold that this cause of action was decided "by necessary implication."

As to the second phase of this question, appellee contends that cause No. 3607 was still pending up to the time of the entry of the order correcting the record of the former judgment, and that appellee could have filed a motion for new trial raising all the issues presented in this suit, and could have appealed from the judgment on the merits in said cause, and that, since such remedy by direct action in the cause in which the judgment was rendered was open, the court should not entertain a separate suit to set aside the judgment. If it be true that a motion for new trial as suggested could have been made, there might be some merit in this contention. The authorities referred to in our discussion of the first phase of this defense, if we have correctly understood them, would preclude the setting aside of the judgment rendered in 1907 on an ordinary motion for new trial (presented for summary action by the court, and not regarded as an independent suit) filed in July, 1911, on grounds that there was error in the judgment on the merits of the case; to say the least of it, grave doubt would exist as to whether such method of procedure was open to appellant. We assume that appellant could have appealed from the judgment in cause No. 3607 after the corrected entry thereof. Palmo v. Slayden & Co., 100 Tex. 13, 92 S. W. 796. Such appeal (admitting that a statement of the facts as to the evidence upon which the court acted in rendering judgment in cause No. 3607 could have been obtained—the record here, without going into detail, shows that this would have been attended with considerable if not insurmountable difficulty) would have brought up for review only irregularities, if any, in connection with the appointment of the guardian ad litem, and rendition of judgment on his statement and pleading, and the real merits of the appellant's case as presented in this suit would not have appeared. The Supreme Court, in the case of Hamblin v. Knight, 81 Tex. 351, 16 S. W. 1082, 26 Am. St. Rep. 818, makes this statement as to when a party may proceed against a judgment in an independent action, though remedy by direct proceeding in the case is still open:

"Such relief * * * will not be administered when the party has an adequate remedy at law nor as a general rule when he has an opportunity to make a motion for a new trial at the term at which the judgment was rendered. * * * If relief against such a judgment is sought during the continuance of the term at which it is rendered, and there exists any circumstances making an application for new trial an insufficient or a less effective remedy than a separate suit would afford the party, upon alleging such facts he should be allowed to proceed by separate suit * * * instead of being confined to a motion for new trial."

[11] We think it sufficiently appears that any remedy that appellant had left by motion for new trial or appeal in cause No. 3607 was not such "adequate remedy" as would preclude her from maintaining this suit. Sumner v. Crawford, 91 Tex. 129, 41 S. W. 995, second column. The court below did not deny appellant's right to proceed in this case for this reason, and we will not seize upon

it as justifying what we consider the otherwise erroneous action of the court in denying appellant the right to go to the jury in the case.

For the reasons stated, the judgment will be reversed, and the cause remanded.

HALL, J. I respectfully dissent from the holding of the majority in this case, and think the judgment should be affirmed, because I believe the plea of res judicata was sustained. After appellants filed their petition in the nature of a bill in equity in the district court of Wichita county to set aside the original judgment in cause No. 3607 upon the ground that Mrs. Rogers was insane at the time of its rendition, and that it was procured through fraud,• Waggoner filed his motion in cause No. 3607 to have, by a judgment entered nunc pro tunc, the description of the land in said original judgment corrected. By their answer filed to that motion appellants presented the issue of fraud, and thereby met the effort of Waggoner to correct the original judgment with pleadings attacking its validity and praying that it be declared void. The first question to be considered is: Under the Texas practice, when a motion is made by plaintiff in a judgment to correct the judgment entry, and all parties have been duly served with notice of the motion, is it permissible for the defendant in the judgment to raise the issue of fraud in its rendition and ask that it be annulled, or must he bring a separate and independent action for that purpose? There is no statute requiring a separate action in such cases, and we must look to general rules of procedure and practice for an answer. As stated in the majority opinion:

"The power to correct the records exists in the court, not by reason of its continued jurisdiction over the subject-matter, but by virtue of its continuing power over its records."

The quotation is from Hickey v. Behrens, 75 Tex. 495, 12 S. W. 681, and neither in that case nor in any other cited by the majority is it said or even intimated that defendants in such a motion may not, by their answer, assail the judgment for fraud and try both the right, on the one hand, to have the judgment entry amended, and, on the other, to have the judgment in toto 'set. aside in one and the same proceeding. Such a holding, in my opinion, would be at variance with the spirit of our laws. It has ever been the policy of the courts of Texas to discourage a multiplicity of suits and to favor the settling in one action of all the controversies practicable. I see nothing impracticable in a proceeding by one party to a judgment to correct it being considered together with a petition by the other to annul it. The liberality of our courts in favoring the joinder of causes, the consolidation of suits and their further efforts to discourage circuity of action, splitting of causes of action and a mul-

tiplicity of suits, and the favor with which pleas of intervention and interpleader are looked upon is so well known that the citation of cases to sustain my contention in this particular, it would seem, is superfluous.

"The rule against multiplicity of suits has peculiar force in our system of procedure. Within reasonable limits it is the cardinal principle as to joinder of parties and causes of action. Even jurisdictions which are distinct and separate in other states are blended in our system; legal and equitable causes of action and grounds of defense may be adjusted in a single controversy." Clegg v. Varnell, 18 Tex. 304; Herring v. Mason, 17 Tex. Civ. App. 559, 43 S. W. 797.

A few illustrations showing the practical application of the policy by the courts may not be amiss. In the case of Blair v. Gay, 33 Tex. 157, we quote from the syllabus as follows:

"Administrators of a deceased lunatic obtained in the probate court * * * a decree for money against a former guardian of the lunatic's property; and afterwards, but within two years, they brought suit in the district court on the guardian's bond to recover the amount of the decree from the guardian and his sureties. The defendants answered that the decree was rendered without any appearance or answer by the guardian, that the guardian was not indebted to the estate, that the decree was based on Confederate money collected by the guardian from an insolvent debtor of the lunatic, and that the guardian was entitled to credits not allowed him in the decree; and they filed a transcript of the proceedings of the probate court, and prayed that its decree be revised and corrected. Held, that this line of defense was competent, the two years · allowed by article 3922, Pas. Dig., for the revision by the district court of the probate court's decree being unexpired, and it being immaterial in what manner the appearance of the parties was obtained in the district court. A policy pervades our whole system of jurisprudence, which requires parties to settle all their. controversies in a single suit, if practical."

In the following cases the attack was made on the judgment by cross-bill, and not by an independent action: Clevenger v. Mayfield, 86 S. W. 1062; Hammond v. Atlee, 15 Tex. Civ. App. 267, 39 S. W. 600; Smart v. Panther, 42 Tex. Civ. App. 262, 95 S. W. 679.
· In response to plaintiff's motion for a new trial, where defendant for whom a general verdict · had been directed admitted certain indebtedness, the court may give plaintiff judgment, and without aid of a jury. Alabama Oil & Pipe Line Co. v. Sun Co., 90 S. W. 202. I think the case of Coleman v. Zapp, 105 Tex. 491, 151 S. W. 1040, relied upon by my Brethren as supporting their position, is a forcible illustration of the rule I am insisting upon. By referring to the report of the case in 135 S. W. 730, and reading it in the same connection, it will be seen that in 1898 Zapp and wife obtained a judgment against Kate Coleman, which became

dormant, and in 1902 an execution was issued based upon it and levied upon property belonging to Kate Coleman, who thereupon filed an injunction suit to restrain the sale upon the ground that the judgment was dormant and the property levied upon exempt. In that action Zapp and wife pleaded their judgment and 'prayed that it be revived. A Waco bank intervened, claiming a lien upon the property levied upon. There was a trial to the court, who made a docket entry, dated April 8, 1903, perpetuating the injunction in favor of Kate Coleman, reviving the judgment against her for the balance due on it and for the intervener bank, foreclosing its lien against both Mrs. Coleman and Zapp and wife. In entering the judgment upon the minutes, that part of it which awarded judgment against Mrs. Coleman in favor of Zapp and wife for the balance due on the original judgment was omitted. A proceeding by scire facias was instituted by Zapp in 1909 to have entered nunc pro tunc and also to revive the judgment rendered in April, 1903. Mrs. Coleman contended that such proceeding was an action to correct a judgment and was barred by the statute of limitation. At the time Zapp and wife instituted the proceeding by scire facias to revive their judgment and have it entered nunc pro tunc they sued out an attachment and had it levied on certain personal property for which C. E. Winn filed a claimant's bond. Mrs. Coleman answered, interposing many objections to the relief sought, including a motion to quash the attachment. If a plaintiff in a judgment can file a motion to have it entered nunc pro tunc, and join with it a proceeding to revive the judgment, issue, and attachment upon it, and if in the same action a third party can file a claimant's bond for the property attached and therein a decree can be rendered ordering such judgment entered nunc pro tunc, foreclosing the attachment lien and in addition grant a recovery against the husband of Mrs. Coleman, to whom she was married since the original judgment against her was revived the first time, and the judgment settling such a conglomeration of disconnected and unrelated contentions be affirmed by both the Court of Civil Appeals and the Supreme Court, certainly, when plaintiff seeks to have, as in this case, a judgment correctly entered nunc pro tunc, the defendant, who alleges she has never had her day in court, can intervene and attack the judgment for fraud. I am convinced that my Brethren have given the language quoted in the majority opinion from the opinion of Chief Justice Phillips in the Coleman-Zapp Case a meaning and interpretation never intended by the writer, because in paragraph 9 (105 Tex. 497, 151 S. W. 1043) Judge Phillips expressly approves the joinder of the scire facias and attachment proceedings with the motion. In the answers filed by appellants they move that the proceeding to correct the judgment

be consolidated with their independent suit, numbered 4043 on the docket of the district court, brought to annul the judgment, but no action appears to have been taken by the court upon that part of the prayer. I think under our practice, if consolidation had been ordered by the trial judge, his action should have been sustained. Spencer v. James, 10 Tex. Civ. App. 327, 31 S. W. 540, 43 S. W. 556; Lewis v. Reynolds, 145 S. W. 1072; Tiefel Bros. & Winn v. Maxwell, 154 S. W. 319; Young v. Gray, 65 Tex. 99; State v. Moore, 57 Tex. 307.

. The majority opinion quotes from Milam County v. Robertson, 47 Tex. 231, language to the effect that after adjournment of the term the jurisdiction or power of the court over its judgment on.its merits is unquestionably exhausted. That was a case where a motion was filed in the Supreme Court to vacate a judgment of that court because it was rendered after two of the appellees had died, their death being shown by affidavits, and the motion having been filed seven years after the Supreme Court's decision. The whole discussion relates exclusively to practice in the Supreme Court, and can, in my opinion, have no bearing whatever upon this case.

I am in tuneful accord with my Brethren and the opinions from which they quote sustaining their pronouncement that the only purpose of a motion to correct a judgment is to have the judgment entry speak truly the decree as rendered; that, considered alone, it presents no issue between the parties except in respect to the accuracy of the record; that it is powerless to reopen the controversy as closed and sealed by the judgment; and that it makes no such attempt. I have no quarrel with that doctrine, and but for the cross-action of appellants in the instant case I would not be dissenting. The answers and cross-actions had the effect of presenting affirmatively the issue of fraud in the rendition of the judgment in addition to the issue of inaccuracy in its entry as presented by the motion, and was in no sense a motion for new trial or to set aside a judgment by default, and does not come within the rule announced in the Hester and Eddleman Cases cited in the majority opinion. It is true that the effect of the answer was to inject issues upon which either party was entitled to a regular trial before a jury, but none was demanded, and they had a right to try before the court if they preferred to do so. Answers of defendants in which affirmative demands are made, pleas in reconvention, set-offs, counterclaims, cross-actions, cross-bills, interpleaders, actions for cancellation, reformation, and many other forms of relief are too numerous along the well-beaten highway of court procedure in Texas and too familiar to require even a reference to any of the multitude of cases where the right of the defendant to any and all such affirmative relief

was not only recognized, but was not questioned. In all such cases the relief sought by the answer might have and frequently has been claimed by an independent action in which the defendant would have been the plaintiff. In the majority opinion it is said:

"We do not mean to say that, if the appellees had answered the issues tendered in appellant's answer to the motion, and the court had actually heard and decided the issues thus made and rendered judgment thereon, we would not consider the matter as being finally disposed of. In such case, under our liberal system of practice, the proceeding and judgment thereon might properly be regarded as a proceeding in an independent action, though it was filed in and took the number and style of the original suit. But the filing of the pleading as a motion, or an answer to a motion, or as a cross-action in the original case, would not destroy its nature, and this brings us back to the first question as to whether it is to be implied that this independent action is disposed of by the entry of an order on the motion in the case proper to correct the judgment. We think, not."

I think the issue was squarely before the court, and that the judgment by implication disposed of it. If so, the question of fraud is res judicata.

It was not necessary for Waggoner to file a formal general denial, or any other reply to the cross-action of appellants. His motion was sufficient. The rule announced in Hunt v. Makemson, 56 Tex. 9, 13, is that, when the plaintiff's pleadings state facts amounting to an answer to a cross-action, it is, for the purpose of making the evidence admissible, to be regarded as an answer. If appellant were entitled to have the judgment annulled and set aside, clearly there would be no judgment for Waggoner to have corrected, as prayed for in his motion, and a decision by the court that he was entitled to have it corrected is tantamount to an adverse declaration of its validity.

Up to this point the case is in this condition: (1) In reply to Waggoner's motion to correct appellants filed their cross-bill to amend; (2) the parties have all appeared and are before the court; (3) the issues are sharply drawn in the pleadings on file and unobjected to; (4) a judgment is entered overruling appellant's exceptions to the motion and granting the prayer of the movant, but saying nothing at all about the cross-action. The final question now is: Does such a judgment, rendered under such circumstances, by implication dispose of the issue of fraud presented by the cross-action? I think it does. Appellants appealed from that judgment, but, it seems, in their appeal questioned only the right of Waggoner to amend the judgment on the ground of limitations. See Waggoner v. Rogers, 108 Tex. 328, 193 S. W. 136. The nature of the relief sought by the respective parties is diametrically opposed one to the other. If the original judgment had been declared void, there was no judg-

ment to amend, and a decision of the court that it should be amended necessarily implies that it was valid. Courts do not amend void judgments. In Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161. The Supreme Court, it seems to me, settled this question. Rosen sued Trammell upon notes secured by vendor's lien upon certain lots, including lot No. 7, praying for judgment and foreclosure upon all the lots. Mrs. Trammell made herself a party, and, joined by her husband, pleaded that lot No. 7 was their homestead. They also prayed for damages for the wrongful and malicious issuance and levy of a writ of sequestration. In obedience to the direction of the court the jury returned a verdict against W. M. Trammell for the amount of the notes, for foreclosure of the lien upon all of the lots, and against defendants on their counterclaim for damages. The judgment was entered accordingly, except that it made no express mention of the counterclaim. Neither the verdict nor the judgment mentioned the homestead claim. Trammell and wife appealed, and the appeal was dismissed by the Court of Civil Appeals. Upon writ of error to the Supreme Court, Judge Hawkins, delivering the opinion, said on this question:

"(2) The controlling issue here, as this case is presented to us, is: Was the judgment in question final? If final, the appeal of plaintiffs in error should have been entertained by the Court of Civil Appeals; if not final, the action of that court dismissing said appeal must be sustained. Upon that issue there have long been in this state two well-defined and sharply conflicting lines of decisions by Courts of Civil Appeals. Such conflict arises particularly, it seems, upon the construction given to article 1994, R. S. 1911, relating to the form of judgments of district and county courts; those Courts of Civil Appeals who adhere to a strict rule of construction in the premises holding that a judgment which does not in express terms specifically dispose of a cross-action or counterclaim is not a final judgment, such as will support an appeal, and those adhering to a more liberal rule of construction holding that a judgment may be final even though it disposes of such cross-action or counterclaim by necessary implication only, without expressly mentioning it. Said statute is as follows: 'Art. 1994. (1335). The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity.'"

After referring to a number of decisions by certain Courts of Civil Appeals, showing the conflict and discussing several decisions of the Supreme Court, Judge Hawkins proceeds:

"In Rackley v. Fowlkes, 89 Tex. 613, 36 S. W. 77, this court held: 'The proposition seems to be sound in principle and well supported by authority that, where the pleadings and judgment in evidence show that the pleadings upon which the trial was had put in issue plaintiff's right to recover upon two causes of action, the

judgment awards him a recovery upon one, but is silent as to the other, such judgment is prima facie an adjudication that he was not entitled to recover upon such other cause.'

"Davies v. Thomson, 92 Tex. 391, 49 S. W. 215, was a suit by the heirs of Thomson, deceased, against the heirs and administrators of Davies, deceased, for recovery of one-half of certain real and personal property held and controlled by Davies at the time of his death, and one-half of all increase and gains in said property since his death, and one-half of all money received from sales of any of said property since that time. If the allegations of the petition were true, plaintiffs were entitled to recover everything sued for by them. The jury found simply: 'For the plaintiffs in the sum of $14,-000.' The court entered judgment accordingly. Upon appeal, this question was certified to this court: 'Is the judgment a final judgment from which an appeal may be taken? The contention is that the verdict and judgment should have in terms made some disposition of the real estate.' In answering said question this court quoted approvingly the foregoing excerpt from its opinion in the Rackley Case, and added: 'The proposition there announced was directly involved in the decision of that case and is decisive of the question certified. The judgment, in our opinion, should be construed to mean that the plaintiffs recover of the defendants the sum of $14,000 and costs, and that they are to take nothing more either in the property claimed or in money. We answered the question in the affirmative.'

"The principle which controlled the last-mentioned two cases is, we think, applicable in great measure to this case. The rule is thus stated in Freeman on Judgments, § 279, and note 1: 'There is no doubt that, if a set-off is presented by defendant in his pleadings, attempted to be supported by evidence to the jury, it will, whether allowed or disallowed, become res judicata. It is settled by the judgment as conclusively, when it does not appear to have been allowed, as though there were an express finding against it' "—citing authorities.

A further clear and emphatic decision by the Supreme Court, which in my judgment is conclusive of this appeal, is in the case of Hermann v. Allen, 103 Tex. 382, 128 S. W. 115, being an action by Allen to recover damages for the wrongful issuance and service upon him of a writ of injunction in a former action against him, and another, by Hermann and another, restraining him from moving a house which belonged to him, but situated on land belonging to Hermann. Judge Williams, for the court, said:

"One of the questions before us arises upon Hermann's plea of res judicata, based on the judgment in the former case. In that action Allen pleaded in reconvention his right to the house, the wrongfulness of the injunction, and damages suffered by him from the service of it upon him. That cause was tried in the district court on its merits, with such plea before the court, and judgment was rendered in favor of the plaintiff therein perpetuating the injunction. We shall assume that the statement of the Court of Civil Appeals that no evidence was offered to show the damages sus-

tained by Allen is correct, although it is questioned by plaintiff in error. Upon Allen's appeal from that judgment the Court of Civil Appeals reversed it ([44 Tex. Civ. App. 125] 97 S. W. 1063), and, proceeding to render such judgment as the trial court should have rendered, adjudged that the injunction be dissolved, that the plaintiffs take nothing by their action, and that defendants recover all costs of suit. Nothing was said in either judgment of the plea in reconvention for damages. In the present case the district court and the Court of Civil Appeals (118 S. W. 794) overruled the contention of plaintiff in error that the claim for damages was adjudicated by the former judgment. The former judgment of the Court of Civil Appeals is the one upon which the question must depend, since that court set aside the judgment of the trial court and substituted its own as the final disposition of the entire cause. It is of the same effect as if it had been rendered by the district court at the end of the trial and no appeal had been taken. Necessarily being the final judgment, it disposed finally of all the issues pending in the cause when it was rendered, determining all the rights of the parties in issue therein and becoming the measure of the relief to which they were entitled. The pleadings certainly put in issue: (1) The right of the defendant therein to move the house; and (2) the right of Allen to recover damages caused by Hermann's interference with that right. The judgment determined the first in his favor, saying nothing about the second. This was necessarily an adjudication that that which was given was all that he had shown himself to be entitled to. The necessary legal effect of the failure to award damages for which a claim was pending in the pleadings was a denial of the right to them. This does not mean that it appears the court actually made a decision upon the plea in reconvention. The record does not show whether that was done or not. The proposition is that the necessary legal effect of a final judgment is to determine finally a cause of action set up in the pleadings and pending for decision in the cause when that judgment is pronounced, unless, indeed, the court exclude it from the scope of its action; and this whether the judgment result from actual decision or oversight of the court. That which is adjudged is the decision of the court that it is all the parties are entitled to. In determining the effect of a judgment it sometimes is important to inquire whether or not the particular question or issue was tried and decided in the cause in which the judgment was rendered. That is true although * * * the cause of action is not the same in the second as that decided in the first action; it is claimed that a party to the second is estopped upon a question given to both which was decided in the first. Nichols v. Dibbrell, 61 Tex. 541; Hamrick v. Gurley, 93 Tex. 480, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330, and authorities cited. Such an inquiry is out of place where the cause of action is the same in the two causes and a final judgment on the merits has been rendered in the first. Of course, we do not hold that the defendant is bound to plead in reconvention his damages in such an action, or that, having done so, he he must prosecute his plea to final judgment. We may fully concede his right entirely to withhold such a claim and to await the termination

of the cause, or, if he has filed a plea in reconvention, to withdraw or discontinue it before trial and in either case, after the termination of that litigation, to bring his independent action for damages sustained. But we cannot concede that he can go to trial and submit his cause for decision upon pleadings raising such an issue, and afterwards be heard to say that it was not involved in the final judgment merely because he introduced no evidence to sustain it and no mention was made of it. The absence of evidence constitutes the best of reasons for denying it; the failure to sustain it is a denial of it.

"In the case of Flippen et al. v. Dixon, 83 Tex. 421, 18 S. W. 803, 29 Am. St. Rep. 653, a writ of sequestration was sued out and levied, and the defendant claimed in reconvention the damages caused thereby. At the trial he adduced evidence in support of his claim, but the judgment made no reference to it in submitting the cause to the jury on special issues. Judgment was rendered in the defendant's favor which said nothing of his claim for damages, and another suit was then brought by him to recover them. This court held that he was precluded by the judgment. It will be seen that the only fact which could be urged to distinguish that case from this is that Dixon adduced evidence to support his claim, which Allen did not. That a mere failure to adduce evidence of a claim put in issue by pleadings cannot be urged to limit the effect of the judgment, if authority were needed for so plain a proposition, is settled by the decisions of this court. Fish v. Miller, 20 Tex. 582; Roberts v. Johnson, 48 Tex. 137.

"The difference between a judgment in a case like this, where a right or claim is pleaded and in issue, when a judgment is rendered, and one in which, though existing, it is not set up and is separable from the cause of action which is pleaded, is illustrated by the decision in Roberts v. Johnson, supra, Flippen v. Dixon, supra, and Johnson v. Murphy, 17 Tex. 216, the first class, and McAlpine v. Burnett, 19 Tex. 500, Ball v. Hill, 48 Tex. 634, Waldrom v. Zacharie, 54 Tex. 504, and Kempner v. Comer, 73 Tex. 201, 11 S. W. 194, the second class. The reason for this difference is that a judgment is logically to be taken as disposing of all the issues pending for decision under the pleadings in the cause, unless the court exclude some of them from the effect of the adjudication, an exception made by other decisions. Converse v. Davis, 90 Tex. 462, 39 S. W. 277; Groesbeck v. Crow, 91 Tex. 74, 40 S. W. 1028; Teal v. Terrell, 48 Tex. 508; Williams v. Wiley, 96 Tex. 152, 71 S. W. 12. The trial court therefore erred in this case in refusing to instruct that the former judgment precluded a recovery by plaintiff herein of any damages which accrued prior to the time of its rendition."

Many authorities from other jurisdictions might be cited announcing the same doctrine, but the question seems to be so well settled in this state by our own decisions cited above and the following that I deem it unnecessary to further discuss the question or prolong the opinion by quoting from any of them. See Stockwell v. Melbern, 168 S. W. 405; Pitt v.

Gilbert, 190 S. W. 1157; Crain et al. v. National Life Insurance Co., 56 Tex. Civ. App. 406, 120 S. W. 1098; Hanrick v. Hanrick (Sup.) 173 S. W. 211; Bomar v. Smith, 195 S. W. 965; Swan v. Price, 162 S. W. 994; Houston v. Gonzales Independent School District, 202 S. W. 963 (8). In McKenzie v. Withers (Sup.) 206 S. W. 503, Montgomery, P. J., of section B of the Commission of Appeals, in an able opinion, announced the same rule. It is true that in the same volume and on the same page the Supreme Court in that case disowns and declines to stand even as godfather to it or any of the offspring of the Commissions of Appeals, simply consenting that it shall live and be enrolled on the parish register. Believing, however, it to be a vigorous offshoot, with a striking family resemblance to Rosen-Trammell and Hermann-Allen, supra, I hereby adopt it, and will, as far as I can, thereby remove the bar sinister.

I think the judgment should be affirmed.