## CUDD v. WHIPPO. (No. 1847.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 2, 1921.)

1. **Trial ⬤➞343—General verdict for plaintiff disposes of cross-action.**

General verdict for plaintiff, by implication, disposes of issues presented in a cross-action.

2. **Partnership ⬤➞121—Judgment for conversion of share of straw and pasturage held unsupported by evidence.**

In action for conversion of share of straw and pasturage owned in partnership, evidence *held* not to support judgment for plaintiff.

3. **Words and phrases—"Pummy" defined.**

"Pummy" is a word which seems to have escaped the vigilance of all lexicographers, possibly is a provincialism peculiar to Ochiltree county, Tex., and presumably means a farm product or the residue of a farm product which has some value as a stock food.

4. **Evidence ⬤➞113(1)—Intrinsic value not provable until absence of market value shown.**

The intrinsic value of straw *held* not provable where it was not shown that it had no market value.

Appeal from Ochiltree County Court; J. M. Grigsby, Judge.

Action by James H. Whippo against Jesse Cudd. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

R. T. Correll, of Perryton, and Barrett, Works & Deatherage, of Amarillo, for appellant.

J. W. Payne, of Perryton, for appellee.

HALL, J. Appellee sued appellant for conversion of certain straw remaining from the preceding year's wheat crop on certain lands which had been leased by the parties from O. W. Hutchinson, alleging in substance that on or about the 1st day of November, 1919, plaintiff was a partnership owner with defendant and Hutchinson in certain pasture and wheat straw, located on certain lands in Ochiltree county, each owning a one-third interest therein; that said straw and pasture was off of about 145 acres of wheat sown on the land by plaintiff and defendant, and that said straw and pasture was of the reasonable value of $400; that on said date there was a certain barley stack and straw, located on said premises, of which the said Hutchinson owned one-third, of the reasonable value of $200, also a certain stalk pasture and pummy stacks, of the reasonable value of $200; that the said Hutchinson had assigned and transferred his interest in said property to plaintiff for a valuable consideration; and that the total value of the same was $800. Plaintiff further alleges that defendant converted all of said property and sold same for $750, which he had applied to his own use and benefit. He alleges he has

---

sustained damages in the sum of $500. The defendant answered by general demurrer and numerous special exceptions, none of which were urged. He further denied generally the allegations in the petition, and specially alleged that on the 7th day of July, 1917, he entered into a contract in writing for the lease of the lands in question, which expired on the 7th day of July, 1918; that at the expiration of the first lease, by agreement with the said Hutchinson, he continued to hold said premises for the crop year of 1918–19, which second lease expired on the 7th day of July; 1919; that the second lease was in all things identical with the terms of the lease for the first year, except it was agreed that Hutchinson should furnish the seed for planting; that defendant should pay all expenses and deliver to the said Hutchinson one-third of all the grain raised on the premises; that thereafter, in the month of August, defendant entered into a contract with plaintiff, whereby plaintiff was to disk and prepare the land for drilling, which should be seeded by defendant during the fall of 1918; that plaintiff and defendant were to bear the expenses incident to the raising of a crop of wheat on the land equally; and that each should have a one-third interest in said grain. He further alleges a breach on the part of plaintiff in several particulars, setting up numerous items of damages by way of cross-action, and claims various amounts due him from plaintiff in the way of repairs upon machinery, board, washing, compensation for work due himself and one extra hand, and which several items and amounts will be omitted as unnecessary to the disposition of the appeal. The appellant denied the partnership under oath. Appellee alleged a previous settlement of all matters between the parties. The case was tried before a jury upon a general charge, resulting in a general verdict for appellee in the sum of $100, with no reference whatever to appellant's cross-action.

[1, 2] Under the view we take of the case, it will not be necessary to consider the numerous assignments in detail. Following the decisions of the Supreme Court in Waggoner v. Knight (Com. App.) 231 S. W. 357, 214 S. W. 690, Hermann v. Allen, 103 Tex. 382, 128 S. W. 115, and Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161, we hold that the general verdict in favor of appellee by implication disposes of the issues presented in the cross-action. We conclude, however, that the judgment must be reversed under those assignments which insist that it is unsupported by the evidence. Plaintiff's testimony with reference to the contract he had with appellant is:

"Our contract was a verbal contract to raise a crop of wheat on said land for the year 1918. The substance of said contract was that I would disk the land with an engine that I owned. Cudd was to drag and sow it. I was to thresh the grain and we would each get one-third; that is, Hutchinson, as landlord, would get one-third, Cudd would get one-third, and I would get the other. Hutchinson furnished the seed. There was about 135 acres of the land we were to sow in wheat. I disked it all but about 20 acres. I received my part of the wheat; never received any part of the pasturage and no part of the straw. I understood Cudd sold the straw piles, the pasturage, and pummy piles to Brillhart. * * * I don't know just how many straw piles there were, but we threshed something over 1,300 bushels of wheat off the field. I have no interest in any part of it but the straw stacks; yes, the wheat straw."

According to Hutchinson, his one-third of the wheat was to be delivered to him in the elevator in June, and the record shows this was done. He further says that about 1,800 bushels of wheat were threshed, and that he sold his interest in the straw to Whippo for one dollar. He testified that he thought there were six or eight stacks of barley, but only two were threshed, and they were cut before the windstorm blew the barley to the ground. Mrs. Whippo testified:

"Mr. Cudd came to our house and told my husband that Mr. Hutchinson would lease his land for one-third of the grain, delivered in Ochiltree."

From her testimony it appears that Whippo had an interest only in the land sown to wheat. Appellant's testimony with reference to the terms of the contract is substantially that Whippo should prepare the land for sowing; that appellant would drag and sow it, each to pay his share of all expenses, and to share with the landlord equally the proceeds of the grain raised on the premises, which would be one-third each. While Whippo was upon the stand, this question was asked: "What was that straw pasture and pummy piles worth?" Over the objection of appellant, he answered:

"About $750; that is what Cudd told me he sold it for, and I suppose it is worth it."

It seems to be uncontroverted that Whippo had an interest only in the wheat crop. It has been held that the straw is part of the wheat crop. Rank v. Rank, 5 Pa. 211. The remainder of the half section of land was part in pasture, and a small portion, probably 45 acres, had been planted to barley and maize. There is no evidence in the record showing that the wheat straw left after threshing, considered separate and apart from the pasturage and pummy piles, had any value. Appellant testified that during Christmas week of 1919 he sold to Brillhart the right of pasturage for $500. Under that contract Brillhart was entitled to keep his cattle on the land for 60 days, during which time appellant would water them at his house, feed them oil cake once a day, and take care of them in his sheds during stormy weather, and that the $500 was the total consideration for pasturage and services. He further testified that he had about 45

acres of maize which he had raised on sod land, in which neither Whippo nor Hutchinson had any interest.

[3] "Pummy" is a word which seems to have escaped the vigilance of all lexicographers, and, if it is a provincialism peculiar to Ochiltree county, the record fails to disclose its meaning. We may reasonably infer, however, that it is a farm product, or the residue of a farm product, which has some value as stock food; but its value separate and apart from the pasturage and the wheat straw is not shown. The only testimony with reference to the value of the wheat straw as it was, fenced off from any available water, is that of appellant, Brillhart, and Jackson. Appellant testified that the straw was worthless, unless water could be secured in connection with the field. Brillhart testified:

"I would say that that field was worthless without water or the use of the sheds or some shelter. I would not consider the straw had any value at all. There was no grazing except the wheat that was growing there. At the time I purchased it the land had been plowed and all sowed in wheat. It was fenced and had no water on it."

On cross-examination he testified:

"Oh, the straw might have some value; I would not give anything for it myself. I never heard of any one buying a straw pile and hauling it anywhere to feed; I would not haul it for it. I could haul off the pummy piles and feed them, but you would lose all the grain, which is about all that is worth anything. I would not consider that either the straw or pummy piles were worth anything if you had to move them to feed. I never placed any value on straw piles. I was buying the pummy piles and wheat pasture and Cudd's time looking after the cattle and feeding them."

Upon this issue Jackson testified:

"The straw piles were just spread out anyway to get rid of the straw. The machine had an old rattle slat stacker, and when the straw would pile up we would get a rope and pull it over. It was in such shape that it would get wet to the bottom every rain that amounted to anything. I would not consider the straw worth anything. That stuff in there without water was valueless. All the barley was threshed but two little piles; I would not call them stacks. The barley straw would not amount to enough to mention—just a little straw. The barley had been blown down in a storm and but little of it was cut."

[4] From this evidence it is plain that the jury could not have ascertained how many pounds or tons of straw were left after threshing, and the testimony is clear that the straw alone as it was situated in the field, away from water, was worthless, and further that it was not worth hauling off for feeding purposes. There is no evidence whatever as to its market value. Its intrinsic value is not provable until it is shown that it has no market value. In so far as the plaintiff's right of action is concerned, the court should have directed a verdict against him. According to the uncontradicted evidence of Cudd, Hutchinson had no interest in the pasturage or pummy piles to assign to Whippo; and neither Hutchinson nor Whippo, by his assignment, could acquire any interest in that part of the $500 which Brillhart paid Cudd as a consideration for his personal services in feeding and looking after the cattle.

For the reasons stated, the judgment is reversed, and the cause remanded.